**Opinion filed June 10, 2010**



# In The

# Eleventh Court of Appeals

_____

## No. 11-08-00183-CR

_____

### JEFFREY DEE STEADMAN, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 8299D**

### O P I N I O N

The jury convicted Jeffrey Dee Steadman guilty of three out of four counts of aggravated sexual assault of a child younger than fourteen years and of two counts of indecency with a child, and assessed his punishment on each of the three aggravated sexual assault charges at ninety-nine years confinement and a $10,000 fine. The jury also assessed Steadman's punishment on each of the two counts of indecency with a child at confinement for twenty years and a fine of $10,000. The sentences are to run concurrently. We affirm.

There is no challenge to the sufficiency of the evidence.

Former Abilene Police Detective Thomas Valdez testified that he began the investigation in this case after he received a telephone tip. After Detective Valdez had interviewed various persons, including the minor victim, he determined that Steadman was a suspect in the offense. Detective Valdez left a message for Steadman, and Steadman later returned the call. Detective Valdez testified that Steadman was aware of the allegations. During Detective Valdez's testimony, the prosecutor asked: "[D]id he admit or deny the allegations?" Detective Valdez answered: "No." Steadman's objection was overruled. Detective Valdez also told the jury that he and Steadman made an appointment for an interview but that Steadman did not show up.

In his first issue on appeal, Steadman complains that the trial court reversibly erred when it overruled a Fifth Amendment objection that he made.[1] Steadman argues that his Fifth Amendment rights were violated when the trial court allowed Detective Valdez to testify that Steadman neither admitted nor denied the allegations against him. We disagree.

On appeal, we review the trial court's decision to exclude or to admit evidence under an abuse of discretion standard. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). We will not reverse a trial court's decision in that regard absent a clear abuse of discretion. *Id.* An abuse of discretion occurs when the decision of the trial court regarding the admission or exclusion of evidence is "so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id.*

The time frame to which Detective Valdez referred was at a time when Steadman had neither been arrested nor been given his *Miranda*[2] warnings. The law is somewhat unsettled in this area, but we do have some guidance. Although the case involved post-*Miranda* silence, the Texas Court of Criminal Appeals has stated that "[p]rearrest silence is a constitutionally permissible area of inquiry." *Waldo v. State*, 746 S.W.2d 750, 755 (Tex. Crim. App. 1988). In another case, while the court found it unnecessary to address the question of the admissibility of pre-arrest silence, it did note that there were those federal courts of appeals that had held that pre-arrest silence is admissible. It also noted that there were other federal courts of appeals in which the opposite result was reached. *Griffith v. State*, 55 S.W.3d 598, 607 n.33 (Tex. Crim. App. 2001); *see also State v. Lee*, 15 S.W.3d 921, 924-25 n. 5 (Tex. Crim. App. 2000) (referring

---

[1]Steadman makes no state constitutional claims. All references to the Fifth Amendment are to U.S. CONST. amend. V.

[2] All references to *Miranda* refer to *Miranda v. Arizona*, 384 U.S. 436 (1966).

to courts in various jurisdictions and their approach to comments upon the silence of a defendant when exercised at various stages in an investigation).

We also find direction from decisions in the federal courts of appeals. In *United States v. Oplinger*, 150 F.3d 1061, 1066-67 (9th Cir. 1998), the silence commented upon occurred at a time before the defendant was arrested and before he had received any *Miranda* warnings, just as in this case. Further, the silence was not in response to any questioning by government officials, again, just as in this case. The court referred to the fact that, although the Supreme Court had not ruled on the exact issue before the *Oplinger* court and this court, that court has held that the government, for impeachment purposes, may properly comment upon a defendant's pre-arrest silence. *Oplinger*, 150 F.3d at 1066 (citing *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980)). The court in *Oplinger* held that the pre-arrest/pre-*Miranda* comments there did not offend the Fifth Amendment.

The court also discussed those situations in which an accused had received his *Miranda* warnings and chose to remain silent. In those situations, the government has, at least implicitly, told the accused that he has the right to remain silent and the exercise of the right would not be used against him. It would be fundamentally unfair to then use that silence against the accused. *Id.* at 1067 n.5; *United States v. Rivera*, 944 F.2d 1563, 1567 (11th Cir. 1991). That is not the case in pre-arrest/pre-*Miranda* situations. "There is no governmental inducement to remain silent and no promise that an individual's silence will not be used against him." *Oplinger*, 150 F.3d at 1067. The court reasoned that in such situations there was no fundamental unfairness. *Id*.

The *Oplinger* court recognized that the First, Seventh, and Tenth Circuits have held that comments upon pre-arrest silence violate the Fifth Amendment privilege against self-incrimination. *Id.* (citing *United States v. Burson*, 952 F.2d 1196, 1200-01 (10th Cir. 1991); *Coppola v. Powell*, 878 F.2d 1562, 1565-68 (1st Cir. 1989); *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1018 (7th Cir. 1987)). "[T]he position those courts have endorsed is simply contrary to the unambiguous text of the Fifth Amendment, which plainly states that '[n]o person…shall be *compelled* in any criminal case to be a witness against himself.' (citing U.S. CONST. amend. V)." *Id.* The court also noted that in the cases to which it referred wherein the position was taken that such testimony violated the Fifth Amendment, the party seeking to claim the privilege had been questioned by a governmental official. *Id.* at 1067 n.6. That was not the case in *Oplinger* and that is not the case in this appeal.

3

The court in *Oplinger* noted that the Fifth and Eleventh Circuits share its opinion that comments upon pre-arrest/pre-*Miranda* silence do not violate the Fifth Amendment. *Id.* at 1067; *see, e.g., Rivera*, 944 F.2d at 1568 ("The government may comment on a defendant's silence if it occurred prior to the time that he is arrested and given his *Miranda* warnings.").

In *United States v. Zanabria*, 74 F.3d 590 (5th Cir. 1996), the defendant was accused of possession of cocaine with the intent to distribute. Although the defendant did not testify, his wife did. She testified that the defendant acted under duress. They had been in financial trouble and had borrowed money from a certain individual. The defendant's wife testified that threats had been directed toward their eight-year-old daughter, and in the face of those threats, the defendant engaged in this criminal activity only to pay back the money. At trial, the customs officer who arrested the defendant was allowed to testify that, prior to his arrest, the defendant said nothing about those threats or that he was in any kind of trouble. During closing argument, the prosecutor also referred to the fact that the threats were never mentioned. On appeal, the court said, "Assuming without deciding that [the defendant's] pre-arrest silence falls within the reach of 'testimonial communications' protected by the fifth amendment, the record makes manifest that the silence at issue was neither induced by nor a response to any action by a government agent." *Zanabria*, 74 F.3d at 593.

We agree with the reasoning of the courts in *Oplinger*, *Rivera*, and *Zanabria*. We hold, as stated by the court in *Waldo*, that pre-arrest silence of a defendant who has not received any *Miranda* warnings "is a constitutionally permissible area of inquiry." We further hold that Steadman's pre-arrest/pre-*Miranda* silence was not the result either of interrogation or of his being compelled to be a witness against himself. Our holding is not to be taken to address those situations that involve comments upon a defendant's post-arrest/pre-*Miranda* silence or those involving silence during interrogation. We issue no holdings in connection with those issues. The trial court did not abuse its discretion. We overrule Steadman's first issue.

In his second issue, Steadman maintains that the trial court erred when it overruled his objection and motion for mistrial directed at a portion of the State's jury argument during the guilt/innocence phase of the trial. During closing argument, the prosecutor named the parties who had cooperated with Detective Valdez in this case. The prosecutor then argued, "The Defendant, knowing what Thomas Valdez was calling to talk to him about, did not . . . deny." Steadman's attorney interrupted with an objection that such a statement constituted an improper comment on Steadman's failure to testify. The State responded, "Prearrest silence is admissible

4

and is proper jury argument under Waldo v. State (sic)." The trial court overruled the objection. The prosecutor then told the jury, "Everyone contacted cooperated, almost." Steadman's attorney again objected that such a statement was an impermissible comment on the defendant's failure to testify. The trial court also overruled that objection.

We review a trial court's rulings on objections to jury arguments under an abuse of discretion standard. *Cole v. State*, 194 S.W.3d 538, 546 (Tex. App.—Houston [1st Dist] 2006, pet. ref'd). A trial court abuses its discretion when the ruling was "so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *McDonald*, 179 S.W.3d at 576.

We agree with Steadman that the failure of a defendant to testify cannot be commented upon, directly or indirectly, during final jury argument. *Garrett v. State*, 632 S.W.2d 350, 351 (Tex. Crim. App. 1982). However, the allegedly offensive comment must be viewed from the jury's viewpoint. *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). It must be clear that the comment refers to the defendant's failure to testify. *Id.* The fact that the comment might be construed as an implied or indirect allusion is not sufficient. *Id.* The question "is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id.* We must analyze the context in which the comment was made in order to determine "whether the language used was of such character." *Id.*

Proper areas of final jury argument are (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answer to arguments of opposing counsel, and (4) proper pleas for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

When examined in context, it is clear that the prosecutor's comment upon Steadman's failure to deny the allegations to Detective Valdez was not directed at Steadman's failure to testify, but upon his failure to deny the allegations during the telephone conversation. It is also clear that the argument about who had cooperated with the detective clearly referred to the same conversation. The State's argument to the trial court that pre-arrest silence was admissible under *Waldo* also referred to Steadman's pre-arrest/pre-*Miranda* silence. We have held such silence to be a subject of proper inquiry. Because the evidence was admissible, a summation of that evidence is proper. *Wesbrook*, 29 S.W.3d at 115. Furthermore, the argument was a reasonable deduction from the evidence. *Id.* We overrule Steadman's second issue.

5

The failure of the trial court to conduct a hearing on his motion for new trial is the subject of Steadman's third issue. Steadman timely filed a motion for new trial. There was no hearing, and the motion was overruled by operation of law. Steadman argues that the trial court should have held a hearing on the motion.

We review a decision to deny a hearing on a motion for new trial for an abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). There is no absolute right to a hearing on a motion for new trial. *Id.* at 338. If a defendant wants a hearing on his motion for new trial, he must present it to the trial court within ten days after he files it. TEX. R. APP. P. 21.6; *Carranza v. State*, 960 S.W.2d 76, 79-80 (Tex. Crim. App. 1998). He must put the trial court on notice that he wants the trial court to take some action on the motion. *Carranza*, 960 S.W.2d at 79-80. Merely filing the motion is not sufficient to constitute presentment. *Id.* at 80. Here, there is nothing in the record to show that Steadman brought the motion to the actual attention of the trial court. Because there is no showing that Steadman presented his motion to the trial court, he has not shown that the trial court erred when it did not conduct a hearing on the motion for new trial.

There is another reason that the trial court did not err. If a defendant raises only matters determinable from the record, a trial court does not abuse its discretion when it fails to hold a hearing on the motion for new trial. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). Even if the defendant does raise matters not determinable from the record, the trial court may conduct the hearing upon affidavits only; it is not required to take oral testimony. *Id.*

In this case, the only matter alleged in the motion for new trial was the failure of the trial court to allow certain family members to remain in the courtroom during voir dire. Steadman attached an affidavit and certain pictures to the motion for new trial, and those pictures showed the layout of the courtroom. First, the trial court was aware of the seating in the courtroom. The record made during the trial contains detailed information about the number and location of available seats in the various parts of the courtroom. The issue was fully developed on the record, and the motion added nothing new. We overrule Steadman's third issue.

In his fourth issue, Steadman asserts that the trial court committed error when it excluded three of Steadman's family members from the courtroom during voir dire. The Court in *Waller v. Georgia*, 467 U.S. 39 (1984), reviewed a case in which the public had been excluded from a motion to suppress hearing. The court noted that it had not decided the extent to which an accused could insist upon a public trial under the Sixth Amendment to the United States

Constitution. *Id.* at 44. It did however refer to various cases under the First Amendment to the United States Constitution in which it was decided that the press and the public had a qualified right under the First Amendment to attend a criminal trial. *Id.* One of those cases to which the court referred was *Press-Enterprise Co. v. Superior Court of California Riverside County*, 464 U.S. 501 (1984), a case decided under the First Amendment. The Court notes that, in that case, the First Amendment right was extended to voir dire proceedings. *Id.* at 44. "[T]he explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public." *Id.* at 46. Therefore, for purposes of this opinion, we will assume that the Sixth Amendment public trial provisions of the United States Constitution extend to voir dire proceedings.

In *Waller*, the Supreme Court set forth the test that should be used to determine the propriety of closure of proceedings to which the Sixth Amendment's public trial provision applies: (1) the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than necessary to protect that interest; (3) the trial court must consider reasonable alternatives to closing the proceeding; and (4) it must make findings adequate to support the closure. *Id*. at 48.

Originally, the trial court did not enter findings on the issues covered by the *Waller* test. We abated this appeal in order that the trial court might make those findings. We now have those findings.

The trial court entered findings regarding the size and configuration of the courtroom. Sixty venire persons had been summoned to the courtroom; there were sixty seats in the gallery area. The trial court was expecting an "emotionally charged" trial. The space on each side of the gallery area was very narrow, and anyone standing or sitting in that space would be in close proximity to one or more of the venire persons. The court found that, if the family members were in such close proximity to the jury panel members, it could make the panel members uncomfortable and reticent to fully express their feelings, attitudes, and possible prejudices.

The trial court also found that, although there was space for the family members to stand or sit in the area behind the bar and in front of the bench, that space is reserved for the court personnel and participants. Allowing others in this space would create security concerns, and security concerns were heightened in this case. Further, allowing others in this area would interfere with access that the bailiff and other security personnel would have to Steadman. The trial court apparently considered placing the family members in the jury box but found that

would interfere with the process of seating the jurors as they were selected. As jurors would be selected, it would be necessary to move the family members from the jury box to the area behind the bar and in front of the bench, creating the same problems as if they had been allowed there originally. The trial court considered other courtrooms, but there were none larger than the one in which this trial took place. The trial court also considered the central jury room, but it was not suitably configured for a trial. Further, in addition to all of these findings, the trial court found that the central jury room was less secure than the courtroom they were using.

We hold that the trial court's findings are sufficient to meet the *Waller* test. The one seeking to close the hearing was the trial court. In its findings, the trial court advanced an overriding interest that was likely to be prejudiced: security. The trial court did not make the closure any broader than necessary to protect that overriding interest; only a few family members were excluded, and that exclusion was only for the voir dire portion of the trial. The findings of the trial court also show that it considered other reasonable alternatives to closing the proceeding. The trial court explored the use of other courtrooms and other facilities in the courthouse and found each of those alternatives to be lacking as well. We hold that the trial court's findings adequately support the closure under *Waller*. We overrule Steadman's fourth issue.

We affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


June 10, 2010

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

8