

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. PD-1356-10

**JEFFREY DEE STEADMAN, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE ELEVENTH COURT OF APPEALS TAYLOR COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, JOHNSON, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined. MEYERS, J., dissented.

## O P I N I O N

In a single jury trial, the appellant was convicted of three counts of aggravated sexual assault of a child and two counts of indecency with a child. The jury assessed punishment at three life sentences for the aggravated assault convictions, two twenty-year sentences for the indecency convictions, and a $10,000 fine for each conviction. The trial court determined that the sentences should run concurrently. On appeal, the appellant argued that the trial

court erred in excluding four members of his family from the courtroom during jury selection, in violation of his Sixth Amendment right to a public trial. In a published opinion, the Eleventh Court of Appeals disagreed, affirming the appellant's convictions.[1] We granted the appellant's petition for discretionary review to examine that holding in light of the recent opinion of the United States Supreme Court in *Presley v. Georgia*.[2] We will reverse.

## FACTS AND PROCEDURAL POSTURE

The appellant came to trial on March 24, 2008. Just before the jury panel was brought into the courtroom, the following colloquy unfolded:

> THE COURT: We are back on the record in 8299-D, State of Texas versus Jeffrey Steadman. The Court is going to bring up a jury panel here in a moment. There are 48 of them. I have 48 seats in the gallery area. The defense counsel has asked that I allow certain family members to be present in the courtroom either standing or with chairs pulled up. [Defense Counsel], I'm assuming you are talking about around the wall.

> [DEFENSE COUNSEL]: Yes, Your Honor. I can't imagine it being a problem as far as any decorum or anything. We have plenty of room for these people. We have 12 juror chairs in the jury panel and we have plenty of room. We have just four people: his mother, his stepfather, his present wife . . .

> THE COURT: The Court is not going to allow folks to be sitting in the jury box during this period of time and I don't believe we have enough room. And [Defense Counsel] wanted the Court to put this of record, the Court's refusal of the Defendant's request to have these four persons either standing or sitting in the courtroom during the jury selection process.
> [Defense Counsel], as I indicated, they are certainly welcome to come

---

[1] *Steadman v. State*, 328 S.W.3d 566 (Tex. App.—Eastland 2010).

[2] 130 S.Ct. 721 (2010).

in unless they are subject to the Rule, if it's imposed, once the jury is seated.

[DEFENSE COUNSEL]: Your Honor, we would ask that we be able to make a bill later on to have photographs of the place here, the courtroom, and I would expect . . .

THE COURT: At the time you request to make a bill, [Defense Counsel], I will take that up at that point. If you want to photograph whatever you want to in the courtroom, you are welcome to do so. The Court's ruling is – I will not prejudge what you may do in the future. We will wait until you make a bill.

[DEFENSE COUNSEL]: And we would object that it violates our constitutional right to an open and fair jury under the U.S. constitution and the state constitution.

THE COURT: Anything else?

[DEFENSE COUNSEL]: We would just like the record to reflect that in the opinion of counsel there is plenty of room and it would not be disruptive in any way to have the jurors here – our witnesses here.

THE COURT: I understand you have made that argument once now. Is there anything – any new argument you want to make, [Defense Counsel]? If not, then the Court's ruling stands.
We will be in recess.

Half an hour later, when court re-convened, the appellant immediately registered a further objection, in the presence, but out of the hearing, of the jury panel:

[DEFENSE COUNSEL]: Your Honor, I would object to the district attorney's investigator sitting where I had requested that my people that are family members be able to sit, the DA's investigator sitting with the jury. We would object to it based upon the Sixth Amendment of the constitution of the United States and the Texas state constitution entitling us to an open and fair trial.

THE COURT: Objection overruled.

At this point, the trial court began to address the jury panel. The trial judge made no further explanation on the record why the appellant's family members would not be allowed in the courtroom during voir dire. Early in the jury-selection process, the district attorney's investigator arrived and was introduced to the jury panel. The reporter's record does not reflect how long she might have stayed or where she may have sat in the courtroom.

After he was convicted, the appellant filed a motion for new trial. Among other things, he reiterated his argument that the trial court erred in excluding members of his family from the courtroom during voir dire. He attached ten photographs of the courtroom as appendices to his motion, along with an affidavit from counsel attesting to their accuracy. The trial court entered a written order denying the motion for new trial, expressly finding that no hearing was necessary to dispose of the matters raised therein.

The appellant raised the issue again on direct appeal, attaching the photographs of the courtroom from his motion for new trial to his brief, which was filed on December 11, 2008. On February 4, 2009, the State filed a motion in the court of appeals requesting that court to abate the appeal and remand the cause to the trial court for additional findings of fact with respect to this issue. Noting the holding of the United States Supreme Court in *Waller v. Georgia*,[3] the State argued that the express findings of fact that a trial court must make in order to justify closing its courtroom to the public had not been made, but through no fault of the State. The trial court had excluded the appellant's family members *sua sponte*, and

---

[3] 467 U.S. 39 (1984).

had deferred any fact finding until such time as the appellant should make a bill of exception, but, because the appellant never pursued such a bill, the State maintained, no findings were made. On February 9, 2009, the court of appeals granted the State's motion and remanded the cause for additional fact findings, without, however, requiring an additional hearing.

Accordingly, in early March of 2009, the trial court entered detailed written findings. After first determining (erroneously) that the courtroom contained sixty seats, and that the panel for the appellant's trial contained sixty potential venire members, the trial court went on to find:

> 3. The space on each side of the gallery area is narrow. Persons standing or sitting in that area would be in close proximity to one or more of the persons on the panel.
> 4. The case on trial was one which was expected to be "emotionally-charged".
> 5. The Court believed that having one or more of the Defendant's family members sitting in close proximity to the panel members would make such panel members uncomfortable and reticent to fully express their feelings, attitudes and possible prejudices.
> 6. There was space adequate for the Defendant's family members to sit or stand in the area behind "the bar," and in front of the bench.
> 7. The space behind the bar end in front of the bench is reserved for parties, their attorneys, the attorney's support staff and court personnel.
> 8. Allowing persons other than the parties, their attorneys, the attorney's staff and court personnel in this space creates security concerns.
> 9. Security concerns are heightened in this case.
> 10. Placing chairs for family members to sit in the area in front of the bench would interfere with access by the Court bailiff and other security personnel to the Defendant.
> 11. There was space adequate for the Defendant's family to sit or stand in the jury box.
> 12. The jury box is reserved for the selected jury members during a jury trial.
> 13. A member of the prosecution's team (an investigator) sat in the jury box during part of the voir dire. No one objected to the investigator sitting in the jury box.

14. The jury box is an area raised above the level of the gallery area.

15. Family members seated in the jury box would be moved when the selected jury was seated. The area to which they could move would be the area in front of the bench, once again creating security concerns.

16. There are no other courtrooms in the Taylor County Courthouse larger than the 350th District Court courtroom.

17. The central jury room on the first floor of the Taylor County Courthouse is a significantly larger space than the 350th District Court courtroom.

18. Moving the voir dire proceedings to the central jury room area after the sixty person panel had been seated could cause delay.

19. The central jury room is not configured as a courtroom. It's [sic] use as a venue for voir dire is inconvenient.

20. The central jury room is less secure than the 350th District Court. In March, 2008, the Taylor County Courthouse did not use a metal detector or otherwise restrict the public's open access to the first floor.

21. The Court did not seek to close the voir dire process but only to control the courtroom arrangement for security and decorum purposes.

A few weeks later the trial court supplemented these findings with additional findings, first to correct its initial erroneous statement with respect to the number of members on the jury panel and the number of seats in the courtroom, and then to add the following:

3. The Defendant's attorney objected to the Defendant's family members not being able to sit in the area where the District Attorney's investigator was sitting. The investigator was either sitting in the area on the side of the gallery or in the jury box.

All of these findings were made without the benefit of an additional hearing; but the appellant failed to request such a hearing, or to object to the lack of one, at least insofar as the record reveals.

In its brief on appeal, filed on March 26, 2009, the State argued that, based on these findings, the trial court's action in excluding the appellant's family members during voir dire was justified under the standard set out in *Waller*. The trial court was properly concerned to

foster uninhibited candor in the potential venire members' responses during voir dire and to maintain the proper security and decorum of the courtroom. Moreover, the trial court considered alternatives to exclusion and correctly rejected them as inadequate, reasonably concluding that "the closure was no broader than necessary to advance the overriding interest of security in the courtroom."[4]

Almost a year later, while the appeal was pending in the court of appeals, the appellant filed a supplemental brief to call the court of appeals's attention to the newly issued opinion of the United States Supreme Court in *Presley v. Georgia*, an opinion expressly holding for the first time that the Sixth Amendment right to an open trial applies to the jury-selection portion of a criminal trial.[5] When it issued its opinion on June 10, 2010, the court of appeals inexplicably failed to cite *Presley*, but it nevertheless assumed for the sake of argument that the Sixth Amendment right would extend to jury selection.[6] It overruled the appellant's point of error nonetheless:

> We hold that the trial court's findings are sufficient to meet the *Waller* test. The one seeking to close the hearing was the trial court. In its findings, the trial court advanced an overriding interest that was likely to be prejudiced: security. The trial court did not make the closure any broader than necessary to protect that overriding interest; only a few family members were excluded,

---

[4] State's Appellate Brief, at 17.

[5] *Presley*, *supra*, at 724.

[6] *Steadman*, *supra*, at 572 ("[F]or purposes of this opinion, we will assume that the Sixth Amendment public trial provisions of the United States Constitution extend to voir dire proceedings.").

and that exclusion was only for the voir dire portion of the trial. The findings of the trial court also show that it considered other reasonable alternatives to closing the proceeding. The trial court explored the use of other courtrooms and other facilities in the courthouse and found each of those alternatives to be lacking as well. We hold that the trial court's findings adequately support the closure under *Waller*.[7]

Reminded via the appellant's motion for rehearing that the Supreme Court had decided *Presley* during the pendency of the appeal, the court of appeals denied rehearing with the observation that it had, in any event, assumed that the Sixth Amendment right would extend to voir dire, and that it had adequately addressed the appellant's other arguments on original submission.[8]

In his petition for discretionary review, the appellant argues that the court of appeals's holding is in conflict with *Presley*. In their respective briefs following our grant of the appellant's petition, the parties devote a substantial portion of their arguments to the appellant's preliminary contention that the court of appeals erred to consider the trial court's supplemental findings of fact following remand. The appellant argues that the court of appeals should not have allowed the trial court to file supplemental findings of fact to retroactively justify a ruling that the record reveals was originally made solely on the basis of an inadequate concern for overcrowding. The State counters that any inadequacy of the original record was not its fault; rather, it was the appellant who failed to make his promised

---

[7] *Id*. at 573.

[8] *Id*. at 573-74.

bill of exceptions and who then failed to object to the supplemental findings or the lack of a hearing on remand. We need not consider these thorny issues, however, because we hold that, even taking the trial court's supplemental findings into account, the court of appeals erred to find that the trial court's closure of the courtroom to the appellant's family members during jury selection was justified under the Sixth Amendment standard announced in *Waller* and reiterated in *Presley*.

## THE LAW

"In all criminal prosecutions," the Sixth Amendment insists, "the accused shall enjoy the right to a . . . public trial[.]"[9] It is incumbent upon the various states to preserve this right in criminal prosecutions in state court.[10] In holding that the Sixth Amendment would not tolerate the closure of a pre-trial suppression hearing to the public over the defendant's objection, the United States Supreme Court, in *Waller*, borrowed a standard from the First Amendment jurisprudence to declare that

> the party seeking to close the hearing must advance an overriding interest that
> is likely to be prejudiced, the closure must be no broader than necessary to
> protect that interest, the trial court must consider reasonable alternatives to
> closing the proceeding, and it must make findings adequate to support the

---

[9] U.S. Const. amend. VI.

[10] *See Duncan v. Louisiana*, 391 U.S. 145, 148 & n.10 (1968) (citing *In re Oliver*, 333 U.S. 257 (1948), for the proposition that "many of the rights guaranteed by the first eight Amendments to the Constitution [including, specifically, the Sixth Amendment right to a "public" trial] have been held to be protected against state action by the Due Process Clause of the Fourteenth Amendment").

closure.[11]

With respect to the last requirement, the Court observed that findings that are too "broad and general" will not suffice to justify closure.[12] In *Presley*, decided while the appellant's direct appeal was pending,[13] the Supreme Court expressly applied the *Waller* standard to hold that exclusion of the defendant's uncle from the courtroom during jury selection violated the defendant's Sixth Amendment right to a public trial.[14] While acknowledging that the right to a public trial is not absolute, the Court nevertheless emphasized that, even in the face of weighty interests that might be served by excluding the public, circumstances justifying

---

[11] *Waller*, *supra*, at 48.

[12] *Id*.

[13] Assuming that *Presley* announced a new rule of constitutional law in holding that the Sixth Amendment right to a public trial embraces jury-selection proceedings—a dubious proposition, considering that the Supreme Court regarded the question to be "so well settled" by prior precedent that it decided the issue in a summary, *per curiam* opinion, 130 S.Ct. at 723-24—it would nevertheless have retroactive application to any state case pending on direct appeal, as this one was. *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). *See also Ex parte Lave*, 257 S.W.3d 235, 236 (Tex. Crim. App. 2008) (quoting *Danforth v. Minnesota*, 552 U.S. 264, 266 (2008), for the proposition that new constitutional rules apply to all cases pending on direct appeal when the new rule is announced). Indeed, at least one court has held that *Presley* would apply retroactively even in post-conviction proceedings because it did not constitute a new rule of constitutional law but was instead dictated by prior Supreme Court precedent. *See Commonwealth v. Alebord*, 80 Mass. App. Ct. 432, 436-37, 953 N.E.2d 744, 748-49 (2011) (*Presley* applies retroactively in post-conviction proceedings because it is not a "new rule" in contemplation of *Teague v. Lane*, 489 U.S. 288 (1989), where Massachusetts has adopted the *Teague* standard for determining retroactivity in a collateral attack). We need not address the question of post-conviction retroactivity today.

[14] *Presley*, *supra*, at 724.

closure "will be rare . . . and the balance of interests must be struck with special care."[15] The

burden of considering reasonable alternatives to closure rests squarely upon the trial court

itself, regardless of what party seeks the closure, and there is no burden on the defendant to

proffer alternatives.[16] In this context, the Court observed that

> [t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials. Nothing in the record shows that the trial court could not have accommodated the public at Presley's trial. Without knowing the precise circumstances, some possibilities include reserving one or more rows for the public; dividing the jury venire panel to reduce courtroom congestion; or instructing prospective jurors not to engage or interact with audience members.[17]

Finally, with respect to the danger that prospective jurors might be tainted by interaction with

members of the public who are in attendance, the Court held that something more than the

mere opportunity for that kind of corrupting interaction must be shown.

> The generic risk of jurors overhearing prejudicial remarks, unsubstantiated by any specific threat or incident, is inherent whenever members of the public are present during the selection of jurors. If broad concerns of this sort were sufficient to override a defendant's constitutional right to a public trial, a court could exclude the public from jury selection almost as a matter of course . . . .
>
> There are no doubt circumstances where a judge could conclude that threats of improper communications with jurors or safety concerns are concrete enough to warrant closing *voir dire*. But in those cases, the particular interest,

---

[15] *Id*. (quoting *Waller*, 467 U.S. at 45).

[16] *Id*. at 724-25.

[17] *Id*. at 725.

and threat to that interest, must "be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."[18]

Applying the exacting standard of *Waller* and *Presley*,[19] we believe that the trial court's findings—even those explicit findings that were entered in response to the court of appeals's remand order—were insufficiently "concrete,"[20] both with respect to jury-panel contamination and to courtroom security, to justify closure. Nor did the trial court take into consideration all reasonably available alternatives.

## ANALYSIS

In its findings after remand, the trial court identified two areas of concern that it believed justified closure of the courtroom to the appellant's family members during jury

---

[18]

*Id.* (quoting *Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty.*, 464 U.S. 501, 510 (1984)).

[19]

Some courts, both state and federal, "have held that the Sixth Amendment test laid down in *Waller* need be less stringent in the 'partial' closure context; that is to say, a 'substantial reason,' rather than an 'overriding interest,' may warrant a closure which ensures at least some public access." *United States v. DeLuca*, 137 F.3d 24 (1st Cir. 1998) (citations omitted). *See also Commonwealth v. Cohen*, 456 Mass. 94, 111 & n.25, 921 N.E.2d 906, 921 & n.25 (2010) (enumerating cases). Here, as in *Waller*, the trial court's closure of the courtroom during a portion of trial was not partial but total—that is to say, the trial court ordered the voir dire "closed to all persons other than . . . court personnel, the parties, and the lawyers" for the duration of the jury-selection proceedings. *Waller*, *supra*, at 42. Thus, the *Waller* standard applies in full force. In any event, even if the less stringent "substantial reason" standard were to apply, we do not think the trial court's findings satisfy the other elements of the *Waller*/*Presley* standard, for the reasons we explain below. *See Cohen*, *supra*, 456 Mass. at 113, 921 N.E.2d at 922 ("[E]ven in a partial closure context, the remaining *Waller* factors must be satisfied.").

[20]

*Presley*, *supra*, at 725.

selection: jury-panel contamination and courtroom security. These are indeed substantial concerns. Under *Presley*, it is obvious that either one alone could be sufficiently momentous to warrant closure under the appropriate circumstances.[21] But *Presley* also puts the onus squarely on the trial court to identify for the record those specific concrete facts that demonstrate that jury-panel contamination and/or courtroom security are areas of legitimate concern in the particular case.[22] The Supreme Court in *Presley* took pains to emphasize that "broad" or "generic" concerns will not serve to justify closure; otherwise, they could become talismans for exclusion of the public in any and every case.[23] In the instant case, even in its findings of fact following the court of appeals's remand, the trial court failed to identify specific circumstances sufficient to remove its concerns about jury-panel contamination and courtroom security from the realm of the generic. While the judge identified two "particular interest[s]" sufficient, in the abstract, to exclude the public, he failed to "articulate" a tangible

---

[21] *See* 130 S.Ct. at 725 ("There are no doubt circumstances where a judge could conclude that threats of improper communications with jurors or safety concerns are concrete enough to warrant closing *voir dire*."). We reiterate that *Presley* applies in full force to this case—a case of total closure that was pending on direct appeal when *Presley* was issued. *See* notes 13 & 19, *ante*.

[22] *See id*. ("Trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials.").

[23] *See id*. ("The generic risk of jurors overhearing prejudicial remarks, *unsubstantiated by any specific threat or incident*, is inherent whenever members of the public are present during the selection of jurors. If broad concerns of this sort were sufficient to override a defendant's constitutional right to a public trial, a court could exclude the public from jury selection almost as a matter of course.") (emphasis added).

"threat" to either of the interests he identified.[24]  There is no showing of a "specific threat or incident" demonstrating that a likely threat either to the integrity of the jury panel or the security of the courtroom existed in this particular case.[25]  Even assuming that either threat existed, moreover, it is apparent that the trial court failed to consider every reasonable alternative to closure that would have obviated the threat.

**Jury-Panel Contamination**

Given the cramped courtroom and the fact that there were only as many seats available as prospective jurors on the panel, the trial court "believed" that the proximity of the appellant's family members to the jury panel would make those jurors "uncomfortable and reticent to fully express their feelings, attitudes and possible prejudices."  Of course, one of the reasons that the right to a public trial is important to defendants in the first place is that "the presence of interested spectators may keep his triers [including jurors] keenly alive to a sense of their responsibility and to the importance of their functions" in the criminal law system.[26]  To the extent that the proximity of the appellant's family members to the jury panel might cause prospective jurors discomfort of this sort, the trial court's concern was actually

---

[24]

*See id*. ("the particular interest, *and the threat to that interest*, must be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered") (emphasis added; internal quotation marks omitted).

[25]

*Id*.

[26]

*Waller*, *supra*, at 46 (quoting *In re Oliver*, *supra*, at 270 n.25, in turn quoting T. Cooley, CONSTITUTIONAL LIMITATIONS 647 (8th ed. 1927)).

somewhat antithetical to the interest secured by the Sixth Amendment. Assuming, however, that any reticence that prospective jurors might experience on account of their discomfort "to fully express their feelings, attitudes and possible prejudices" constitutes a legitimate jury-panel contamination concern under *Presley*, the only concrete fact on the record to suggest that such reticence was likely to occur was the space limitations in the courtroom itself. The record contains no evidence of any outburst on the part of the appellant's family members, or history of such outbursts in prior court proceedings, that might serve to inhibit prospective jurors.[27] We have no particular basis to suppose that the family members would attempt to speak to, or otherwise try to communicate with or influence, any of the prospective jurors simply because of their proximity. Nor does the record divulge any particular reason to believe that the jury would necessarily recognize they were members of the appellant's family. To nevertheless exclude them altogether from the courtroom on the chance that some prospective juror might guess their status, and therefore violate his solemn oath to "make true answers" to the trial court during voir dire proceedings, is too speculative to defeat the appellant's otherwise compelling Sixth Amendment right to have them present.[28] Without

---

[27]    *Cf. State v. Williams*, 328 S.W.3d 366, 370 & n.4 (Mo. App. W.D. 2010) (acknowledging that the trial court's order excluding the families of the defendant and his victim from the courtroom during voir dire may well have been constitutionally acceptable where two panels had already been quashed on account of outbursts and improper contact with potential jurors, but also noting that "[m]ere speculation regarding possible contamination of the jury pool is not enough" to justify exclusion; in any event, the defendant expressly consented to the exclusions and therefore waived any error).

[28]    *See* TEX. CODE CRIM. PROC. art. 35.02 ("To those present the court shall cause to be

more tangible evidence of an actual or impending threat, we cannot reasonably conclude that the trial court's fear of jury-panel contamination actually constituted "an overriding interest" on the record of this particular case.[29]

## Courtroom Security

Noting that the appellant's trial was expected to be "emotionally-charged," the trial court found that "[s]ecurity concerns are heightened in this case." This is a legitimate concern that will certainly justify closure in some cases. However, other than describing how some of the potential alternatives to closure might compromise ordinary courtroom-security measures, the trial court's findings identified no concrete facts to support its conclusion that

---

administered this oath: 'You, and each of you, solemnly swear that you will make true answers to such questions as may be propounded to you by the court, or under its directions, touching your service and qualifications as a juror, so help you God.'").

[29]

*Presley*, *supra*, at 724 (quoting *Waller*, *supra*, at 48). *See also Bucci v. United States*, 662 F.3d 18, 26 (1st Cir. 2011) ("[T]he Supreme Court [in *Presley*] expressly rejected the justification of preventing juror-public intermingling because this 'generic risk' is 'inherent' to every voir dire proceeding."); *United States v. Gupta*, 650 F.3d 863, 866 (2nd Cir. 2011) (parties agree that exclusion of the public from voir dire was not justified by generic concerns stemming from "the large number of jurors in the venire panel" and the need "to protect the panel from hearing anything about the case from any member of the public present"); *People v. Martin*, 16 N.Y.3d 607, 611, 949 N.E.2d 491, 494, 925 N.Y.S.2d 400, 403 (2010) ("Absent a specific threat that a spectator may influence a prospective juror, it is improper to close the courtroom for that reason. * * * The court here made no such finding."); *State v. Cuccio*, 350 N.J. Super. 248, 267, 794 A.2d 880, 891 (2002) ("The judge's perceived need to exclude the families from the courtroom [during voir dire] in order 'to keep the peace' was not adequately supported in fact."); *People v. Willis*, 274 Ill. App. 3d 551, 554, 654 N.E.2d 571, 574, 211 Ill. Dec. 109, 111 (1995) (fear of juror contamination is a "[f]acially" valid overriding interest, but "the record fails to show that the jury selection proceedings were likely to be prejudiced by the presence of defendant's family in the courtroom"); *People v. Taylor*, 244 Ill. App. 3d 460, 467-68, 612 N.E.2d 543, 548-49, 183 Ill. Dec. 891, 896-97 (1993) (same); *Commonwealth v. Johnson*, 309 Pa. Super. 367, 385, 455 A.2d 654, 663 (1982) (trial court's stated concern that proximity of the public to prospective jurors would be intimidating was not supported by the record and could not support closure "whatever the circumstances").

security concerns were "heightened" in this case. Although the punishment-phase evidence suggests that the appellant is a recidivist who would pose a danger of sexually assaulting children in the future, all of his prior criminal conduct occurred in private venues. There is no indication in the record of public violence of any sort, no documented history of disruptive or contumacious conduct in the courtroom, and no suggestion of threats he might have made against court participants.[30] If the fact that emotions might run high in the course of a locally sensational trial could alone justify closure, a trial court would be entitled to exclude the public—not just from voir dire proceedings but from entire trials—in any number of criminal cases. The trial court's concern for security in this case was insufficiently documented to satisfy *Presley*'s requirement of fact findings from the court that are tangible and specific enough to support depriving the appellant of his constitutional right to a public trial.

### Reasonable Alternatives

Finally, it is true that the trial court did consider a number of alternatives to closure, but discounted them because they would compromise ordinary courtroom-security measures, would cause "delay," or were simply "inconvenient." It should be apparent enough that neither of the latter two considerations, by themselves, satisfies *Presley*—neither

---

[30] *Cf. Commonwealth v. Caldwell*, 459 Mass. 271, 284, 945 N.E.2d 313, 326 (2011) (holding that the trial court was justified under *Presley* in excluding spectators from the courtroom, including members of the defendant's family, during sentencing phase of trial because the record showed they had made explicit threats of bodily harm against a court officer).

convenience nor judicial economy can constitute an "overriding interest."[31]  It is equally obvious that the first consideration—compromising courtroom security—could readily provide a reasonable basis to reject a particular alternative to closure, under the appropriate circumstances.

That a trial court can reasonably discount *some* alternatives, however, does not insulate it from *Presley*'s mandate that it be able to sensibly reject "*all* reasonable alternatives" before it can exclude the public from voir dire proceedings.[32]  *Presley* itself mentioned one alternative that the trial court in this case failed to consider, an alternative that would have solved both the jury-contamination issue and the courtroom-security issue: "dividing the jury venire panel to reduce courtroom congestion[.]"[33]  The record shows that, not counting a break for lunch, jury selection in the appellant's case lasted a little less than

---

[31]

*See Owens v. United States*, 483 F.3d 48, 62 (1st Cir. 2007) ("To our knowledge, a trial closure has not yet been justified on the basis of convenience to the court."); *id*. (citing *People v. Harris*, 10 Cal. App. 4th 672, 12 Cal. Rptr. 2d 758 (Cal. App. 1992), for the proposition that a desire to expedite jury selection, by itself, can never be considered an interest sufficient to override the defendant's Sixth Amendment right to a public trial); *Martin*, *supra*, 16 N.Y.3d at 612, 949 N.E.2d at 495, 925 N.Y.S.2d at 404 (neither "the need for judicial efficiency [nor] the conservation of judicial resources trump[s]" the defendant's right to a public trial); *State v. Torres*, 844 A.2d 155, 161 (R.I. 2004) ("physical restrictions" of the courtroom, without more, could not justify exclusion of the defendant's sisters during jury selection).

[32]

*Presley*, *supra,* at 725 (emphasis added).  *See also Commonwealth v. Cohen*, *supra*, 456 Mass. at 115, 921 N.E.2d at 924 (although trial court considered and reasonably rejected some alternatives, "additional alternatives should have been examined").

[33]

*Id*.  *See also Bucci*, *supra*, 662 F.3d at 26 ("The Supreme Court in *Presley* made clear that alternative methods of increasing the available public seating, such as splitting the venire, must be adopted if reasonable.").

four and a half hours. Had the trial court divided the panel in two, the courtroom would have been only half filled at any one time, providing ample room for spectators. The trial court could reasonably have expected to pick a jury over the course of a long workday and also accommodated the appellant's family by seating them in the gallery, remote enough from the prospective jurors to obviate any prejudicial interaction and sufficiently distant from the formal areas of the courtroom so that their presence would not impede ordinary security measures. Insofar as the record reveals, the trial court did not consider this option.

With respect to jury-panel contamination, *Presley* offered another reasonable alternative that the trial court did not consider: "instructing prospective jurors not to engage or interact with audience members."[34] Particularly in view of the fact that the record reveals no concrete reason to believe that the appellant's family would attempt to interact with the prospective jurors, we have no reason to believe that an instruction to have no interaction with courtroom spectators would lack efficacy. Had the trial court both divided the jury panel *and* instructed both halves of the panel to have no interaction with spectators, any danger of jury-panel contamination should have been wholly defused.

Finally, the trial court could have placed as many as eleven of the prospective jurors in the jury box, at least during the bulk of the jury-selection process, allowing the appellant's family members to observe the voir dire from the seats thus vacated in the gallery. After all, the record suggests that the jury box remained vacant during most of voir dire, perhaps

------

[34] *Presley*, *supra*, at 725.

having been occupied for some indeterminate period of time by the prosecutor's investigator. The trial court either did not consider this alternative to closure or else considered but rejected it because the family members would eventually have to be "moved when the selected jury was seated." But this concern would not have foreclosed the option of relocating some veniremembers to the jury box and placing the family members in the gallery seats thus vacated, at least until that time arrived.[35] *Presley* mandates that any closure of the courtroom "be no broader than necessary to protect" whatever overriding interest exists to close the proceedings.[36] Even if removing the appellant's family members from the courtroom would have proven unavoidable at the end of voir dire, for the trial court to prevent the family members from observing jury selection—at least up until the point of the actual seating of the jury[37]—clearly violated the appellant's Sixth Amendment right to a public trial.

---

[35]

*Cf. Owens*, *supra*, at 62 ("Once there was sufficient space in the courtroom, we see no state interest–compelling or otherwise–in not permitting [the defendant's] family, friends, or other members of the public to observe the proceedings."); *Cohen*, *supra*, 456 Mass. at 114, 921 N.E.2d at 924 ("if space in the court room is or becomes available, the judge must make sure that members of the public who wish to observe the proceedings are not prevented from doing so").

[36]

*Presley*, *supra*, at 724.

[37]

Moreover, the record in this case shows that, by the time the parties exercised their peremptory strikes and the jury was called and seated, at least five veniremembers had been dismissed, either on challenge for cause or by agreement of the parties. This would have provided a sufficient number of seats in the gallery from which the appellant's family members could have observed the proceedings for the brief period it took the trial court (the record reflects it was a mere two minutes) to summon the jurors to the jury box and excuse the balance of the jury panel.

**CONCLUSION**

The trial court identified two interests in closure of the appellant's voir dire that could well prove sufficient to override a defendant's right to a public trial in the abstract: jury-panel contamination and courtroom security. Nevertheless, the trial court never articulated any substantive "threat" to either of these interests in this case and failed to supply "findings specific enough that a reviewing court can determine" that closure of the courtroom during the appellant's voir dire was warranted.[38] Nor did it satisfy the "obligat[ion]" that both *Presley* and *Waller* unequivocally impose upon trial courts "to consider all reasonable alternatives to closure."[39] The court of appeals erred to conclude otherwise. We hold that the appellant suffered a violation of his Sixth Amendment right to a public trial.

In *Waller*, the Supreme Court expressed its agreement with what it characterized as "the consistent view of the lower federal courts" that, when a Sixth Amendment violation of the right to public trial has been established, a "defendant should not be required to prove specific prejudice in order to obtain relief for a violation" of this right.[40] When the constitutionally tainted portion of trial encompasses the entire jury-selection process, it has

---

[38]

  *Id*. at 725.

[39]

  *Id*.; *Waller*, *supra*, at 48.

[40]

  *Waller*, *supra*, at 49-50. Because the violation in *Waller* occurred during a pre-trial suppression hearing, the Supreme Court remanded the case to the lower court, observing that "the remedy should be appropriate to the violation. If, after a new suppression hearing, essentially the same evidence is suppressed, a new trial presumably would be a windfall for the defendant, and not in the public interest." *Id*. at 50.

been almost universally held that relief involves a new voir dire and a new jury; perforce, it necessitates a new trial.[41] Accordingly, we reverse the judgments of the court of appeals and the trial court, and we remand the cause to the trial court for a new trial.

---

[41]

In *Presley* itself, the Supreme Court reversed the state-court judgment and remanded the cause "for further proceedings not inconsistent with this opinion." *Presley*, *supra*, at 725. The state court eventually reversed the conviction and remanded the cause to the trial court for a new trial. *Presley v. State*, 307 Ga. App. 706, 707, 706 S.E.2d 103, 104 (2011). *See also, e.g.*, *People v. Martin*, *supra*, 16 N.Y.3d at 613, 949 N.E.2d at 495-96, 925 N.Y.S.2d at 404-05 (exclusion of the defendant's father from the courtroom during two-day voir dire constituted Sixth Amendment error not subject to a harm analysis and necessitated a new trial); *United States v. Agosto-Vega*, 617 F.3d 541, 543, 548 (1ˢᵗ Cir. 2010) (violation of right to public trial by exclusion of the defendant's family members from courtroom during entire voir dire stage is "structural error" that requires a new trial); *Cohen*, *supra*, 456 Mass. at 118-19, 921 N.E.2d at 927 (error in excluding the defendant's friends and supporters during three out of five days of jury selection was "structural" and called for a new trial since "we cannot separately order a new jury selection apart from a new trial"); *Owens*, *supra*, at 62-66 (exclusion of the defendant's family members during a full day of voir dire could not be deemed "trivial," but would instead constitute a Sixth Amendment violation and a "structural error"); *Torres*, *supra*, at 162 (though voir dire only lasted for half of a day, exclusion of the defendant's two sisters for the duration was error not subject to a harm analysis, and "the appropriate relief is the granting of a new trial"); *Cuccio*, *supra*, 350 N.J. Super. at 261, 268, 794 A.2d at 888, 892 (error in excluding the defendant's family from the courtroom for the entire day-and-a-half long voir dire was "structural[,]" necessitating a new trial); *Willis*, *supra*, 274 Ill. App. 3d at 554, 654 N.E.2d at 574, 211 Ill. Dec. at 112 (closure of the courtroom to the defendant's family members during voir dire violated his right to a public trial "and the appropriate remedy for improper closure is a new trial"); *Taylor*, *supra*, 244 Ill. App. 3d at 468, 612 N.E.2d at 549, 183 Ill. Dec. at 897 (it was error to exclude the defendant's siblings from the courtroom during voir dire and, "even though the violation came during the jury selection process, it is impossible to separate that part from the rest of the trial[,]" so a new trial was ordered); *Watters v. State*, 328 Md. 38, 48-49, 612 A.2d 1288, 1293 (1992) (closure of the courtroom to the public, including the defendant's family, for the duration of a morning-long voir dire, constituted "structural defect" and the appropriate relief "is necessarily the granting of a new trial"); *Johnson*, *supra*, 309 Pa. Super. at 383-84, 455 A.2d at 662-63 (trial court's "indiscriminate exclusion" of the public from the courtroom during the defendant's voir dire resulted in a new trial). *But see Gupta*, *supra*, at 867-872 (while acknowledging that exclusion of the defendant's family members from morning-long voir dire process did not satisfy the *Waller/Presley* criteria, the appellate court nevertheless refused, over a stout dissent, to reverse the conviction and order a new trial because the impact of the exclusion was deemed to be too "trivial" to implicate the interests protected by the Sixth Amendment right to a public trial).

DELIVERED:      March 7, 2012
PUBLISH