[949 NE2d 491, 925 NYS2d 400]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROY
MARTIN, Also Known as REALITY MARTIN, Appellant.

Argued March 24, 2011; decided May 10, 2011

**POINTS OF COUNSEL**

*Appellate Advocates*, New York City (*Katherine A. Levine* and *Lynn W.L. Fahey* of counsel), for appellant. I. The trial court denied appellant his Sixth Amendment right to a public trial when it ejected appellant's father, the sole spectator, from the courtroom during jury selection. (*People v Hinton*, 31 NY2d 71; *People v Clemons*, 78 NY2d 48; *People v Jelke*, 308 NY 56; *People v Nazario*, 4 NY3d 70; *People v Jones*, 47 NY2d 409; *Waller v Georgia*, 467 US 39; *People v Jones*, 96 NY2d 213; *People v Martinez*, 82 NY2d 436; *People v Kin Kan*, 78 NY2d 54; *People v Ramos*, 90 NY2d 490.) II. Appellant was improperly sentenced as a second felony offender because the period during which he was incarcerated before sentencing on his prior conviction should not have been used to toll the 10-year limitation period of Penal Law § 70.06. (*People v McEachern*, 275 AD2d 330; *People v Holman*, 53 AD3d 775; *Matter of Yolanda D.*, 88 NY2d 790; *Friedman v Connecticut Gen. Life Ins. Co.*, 9 NY3d 105; *People v Santi*, 3 NY3d 234; *People v Dozier*, 78 NY2d 242; *Matter of Caraballo v Community School Bd. Dist. 3*, 49 NY2d 488; *People v Faust*, 235 AD2d 430; *People v Tatta*, 196 AD2d 328.)

*Charles J. Hynes, District Attorney*, Brooklyn (*Sholom J. Twersky, Leonard Joblove* and *Victor Barall* of counsel), for respondent. I. Defendant failed to preserve his specific claims on appeal regarding the alleged abridgement of his right to a public trial. Moreover, defendant's public trial claim should be rejected because defendant failed to create an adequate record for appellate review. Finally, the trial court's temporary exclusion of defendant's father from a limited portion of the voir dire was of a de minimis nature, and thus does not warrant reversal of defendant's conviction. (*Waller v Georgia*, 467 US 39; *People v Tevaha*, 84 NY2d 879; *People v Martinez*, 82 NY2d 436; *People v Cameron*, 254 AD2d 367; *People v Suarez*, 245 AD2d 320; *People v Richards*, 235 AD2d 557; *People v Pollock*, 50 NY2d 547; *People v Armond*, 251 AD2d 80; *People v Latta*, 222 AD2d 303; *People v Stovens*, 237 AD2d 154.) II. Defendant was properly adjudicated a second felony offender. (*People v Cagle*, 7 NY3d 647; *People v Tatta*, 196 AD2d 328; *People v Dozier*, 78 NY2d 242; *People v Orr*, 57 AD2d 578; *People v McEachern*, 275 AD2d 330; *People v Holman*, 53 AD3d 775; *People v Cortez*, 231 AD2d 450; *Doctors Council v New York City Employees' Retirement Sys.*, 71 NY2d 669; *People v Tychanski*, 78 NY2d 909; *People v Kisina*, 14 NY3d 153.)

**OPINION OF THE COURT**

CIPARICK, J.

The issue presented for our determination is whether defendant's right to a public trial was violated when the trial judge sua sponte closed the courtroom, specifically ejecting defendant's father during voir dire without considering any alternative accommodations. We hold that such an action violated defendant's right to a public trial and warrants reversal.

Defendant was arrested on November 19, 2006. He was subsequently charged with criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]), criminal possession of a controlled substance in the fifth degree (Penal Law § 220.06 [5]), two counts of criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [2]), criminal possession of marijuana in the fifth degree (Penal Law § 221.10) and two counts of unlawful possession of marijuana (Penal Law § 221.05).

On March 4, 2008, after a *Sandoval* hearing and just prior to the commencement of voir dire, the court engaged in the following colloquy:

"THE COURT: . . . I turn to the defendant's father. Would you please rise for a moment. State your name.

"MR. MARTIN SR.: Roy Martin senior.

"THE COURT: Sir, we're going to be bringing in a panel of jurors in just a few minutes and we will need every seat in the courtroom. Do you understand that?

"MR. MARTIN SR.: Yes, your honor.

"THE COURT: I don't want you physically near any of these people. Consequently, I am going to ask you to step out and go to the far end of the hallway. I want no form of communication between you and any of these jurors. No verbal communication. I want no non-verbal communication. Do you understand?

"After that we will excuse a number of jurors as we proceed. Consequently, there will be room in the courtroom. The Sergeant will ask one of his officers to tell you when there is room here for you to step in. Do you understand that?

"MR. MARTIN SR.: Yes, Your honor.

"THE COURT: Sergeant, I want nobody sitting in the row in front of him or in the same row. Do you understand that?

"MR. KLIMAN [defendant's counsel]: For the record, I object.

"THE COURT: Sir, when you step out I want you to have no form of communication with these people.

"MR. KLIMAN: I object to my client's father not being allowed to observe every aspect of the trial. This is a public trial. He has a right to have his father's support and to be in the audience for every aspect. . . .

"THE COURT: The Court sees no reason to change its rule. The Court is obligated to observe the integrity of the proceeding and that minor action is acceptable to do this."

The record does not reflect that the court considered alternatives to closure, such as reserving a row of seating for the public or allowing defendant's father to be present elsewhere in the

courtroom until a seat became available. During the morning of voir dire, which lasted approximately 2¹/₂ hours, 10 jurors were excused. At no time was defendant's father informed he was free to reenter the courtroom. After a lunch break, the court reconvened and defendant's attorney notified the court that defendant's father had not been let in during the morning and had left the building after the court broke for lunch. The trial court informed defendant's attorney that "[w]hen there is room in the courtroom he will be allowed in and we are close approaching that . . . point in time." Voir dire continued that afternoon and concluded at the end of the following day. Defendant's father attended the trial proceedings and defendant was convicted of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]). The Appellate Division affirmed (71 AD3d 917 [2010]). A Judge of this Court granted leave to appeal (15 NY3d 753 [2010]) and we now reverse.

"In all criminal prosecutions, the accused shall enjoy the right to a . . . public trial" (US Const 6th, 14th Amends; *see also* Civil Rights Law § 12; Judiciary Law § 4). This right "has long been regarded as a fundamental privilege of the defendant in a criminal prosecution" (*People v Jelke*, 308 NY 56, 61 [1954]) and extends to the voir dire portion of a trial (*see Presley v Georgia*, 558 US —, —, 130 S Ct 721, 723-724 [2010]). While trial courts have discretion to close the courtroom to the public, that discretion must be exercised only " ' "when unusual circumstances necessitate it" ' " (*People v Jones*, 96 NY2d 213, 216 [2001], quoting *People v Hinton*, 31 NY2d 71, 76 [1972]). A party "seeking to close [a] hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and . . . must make findings adequate to support the closure" (*Waller v Georgia*, 467 US 39, 48 [1984]).

In closing the courtroom, the court indicated two possible reasons for the closure: first, that every seat would be occupied by potential jurors and, second, a concern that defendant's father might influence them. Although these were relevant considerations, neither of these concerns, without more, rises to the level of "an overriding interest that is likely to be prejudiced."

Absent a specific threat that a spectator may influence a prospective juror, it is improper to close the courtroom for that reason.

"The generic risk of jurors overhearing prejudicial remarks, unsubstantiated by any specific threat or incident, is inherent whenever members of the public are present during the selection of jurors. If broad concerns of this sort were sufficient to override a defendant's constitutional right to a public trial, a court could exclude the public from jury selection almost as a matter of course" (*Presley*, 558 US at —, 130 S Ct at 725).

It is the court's duty to make a finding on the record that threats of "improper communications with jurors or safety concerns are concrete enough to warrant closing voir dire" (558 US at —, 130 S Ct at 725). The court here made no such finding.

Neither does the need for judicial efficiency and the conservation of judicial resources trump this constitutional right. While the trial court does have an inherent power, at its discretion, to "monitor admittance to the courtroom, as the circumstances require, in order to prevent overcrowding [or] to accommodate limited seating capacity," such power does not extend to excluding specific members of the public from the courtroom (*People v Colon*, 71 NY2d 410, 416 [1988]).

"Trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials" (*Presley*, 558 US at —, 130 S Ct at 725). Like the court in *Presley*, the court in this instance did not consider any alternatives to closing the courtroom in order to prevent overcrowding or potential jury contamination. There is nothing in the record that shows that the court could not have accommodated defendant's father. As noted in *Presley*, "some possibilities include reserving one or more rows for the public; dividing the jury venire panel to reduce courtroom congestion; or instructing prospective jurors not to engage or interact with audience members" (558 US at —, 130 S Ct at 725). The court is required to consider alternatives even if neither party suggests any (558 US at —, 130 S Ct at 724). Consequently, pursuant to *Presley*, the trial court's failure to consider any alternate accommodations violated defendant's right to an open trial, regardless of the reasons for closure. "[E]ven assuming, *arguendo*, that the trial court had an overriding interest in closing *voir dire*, it was still incumbent upon it to consider all reasonable alternatives to closure. It did not, and that is all this Court needs to decide" (558 US at —, 130 S Ct at 725).

■ A violation of the right to an open trial is not subject to harmless error analysis and "a per se rule of reversal irrespective of prejudice is the only realistic means to implement this important constitutional guarantee" (*People v Jones*, 47 NY2d 409, 417 [1979]). However, the People have proffered the argument that the closing of the courtroom in this instance was so inconsequential that it is trivial, citing *Gibbons v Savage* (555 F3d 112 [2d Cir 2009]) and *People v Peterson* (81 NY2d 824 [1993]).

While the facts in *Gibbons*, which predates *Presley*, are remarkably similar to the instant case, the Second Circuit found that "nothing of significance happened" while petitioner's mother was kept out of the courtroom (*Gibbons v Savage*, 555 F3d at 121). Here, there was extensive questioning of prospective jurors in open court about such matters as their familiarity with the neighborhood of the crime and their experiences with police officers. The ability of the public to observe questioning of this sort is important, both so that the judge, the lawyers and the prospective jurors will be conscious that they are observed, and so that the public can evaluate the fairness of the jury selection process. "The process of juror selection is itself a matter of importance, not simply to the adversaries but to the criminal justice system" (*Press-Enterprise Co. v Superior Court of Cal., Riverside Cty.*, 464 US 501, 505 [1984]).

Finally, the People's reliance on *People v Peterson* (*supra*) is misplaced. *Peterson* stands for the proposition that a "brief and inadvertent continuation of a proper courtroom closing, which was not noticed by any of the participants, did not violate defendant's right to a public trial" (81 NY2d at 825). However, it further held that "[a] denial of the public trial right requires an affirmative act by the trial court excluding persons from the courtroom, which in effect explicitly overcomes the presumption of openness" (*id.*). That is precisely what occurred in this case.

Therefore, the order of the Appellate Division should be reversed and a new trial ordered.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order reversed, etc.