# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

706

KA 11-01388

PRESENT: SCUDDER, P.J., CENTRA, FAHEY, PERADOTTO, AND LINDLEY, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                MEMORANDUM AND ORDER

VINCENT TORRES, DEFENDANT-APPELLANT.
(APPEAL NO. 1.)

---

J. SCOTT PORTER, SENECA FALLS, FOR DEFENDANT-APPELLANT.

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (VICTORIA M. WHITE OF COUNSEL), FOR RESPONDENT.

-----------------------------------------------------------------------------------------

Appeal from a judgment of the Onondaga County Court (William D. Walsh, J.), rendered July 5, 2011.  The judgment convicted defendant, upon a jury verdict, of burglary in the second degree, attempted sodomy in the first degree, sodomy in the first degree (two counts) and sexual abuse in the first degree.

It is hereby ORDERED that said appeal from the judgment insofar as it imposed sentence on the conviction of burglary in the second degree is dismissed, the judgment is reversed on the law and a new trial is granted on counts two through five and seven of the superseding indictment.

Memorandum:  In appeal No. 1, defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, burglary in the second degree (Penal Law § 140.25 [2]), sexual abuse in the first degree (§ 130.65 [1]), and two counts of sodomy in the first degree (former § 130.50 [1]).  In appeal No. 2, defendant appeals from a resentence with respect to the conviction of burglary in the second degree.

With respect to appeal No. 1, we agree with defendant that reversal is required based on County Court's error in closing the courtroom.  We note at the outset that, although we agree with the People that a defendant is required to preserve that contention for our review (*see People v Borukhova*, 89 AD3d 194, 225, *lv denied* 18 NY3d 881, *rearg denied* 18 NY3d 955; *People v Varela*, 22 AD3d 264, 264-265, *lv denied* 6 NY3d 781), we disagree with the People that defendant failed to make the appropriate objection.  Although defendant's objection was made off the record, the parties and the court agreed during argument on defendant's post-trial motion to set aside the verdict that defendant had indeed objected to the court's procedure.  It is well settled that a post-trial motion pursuant to

CPL 330.30 cannot preserve a contention for review that is raised for the first time in the motion (*see People v McFadden*, 94 AD3d 1150, 1150; *People v Jones*, 85 AD3d 1667, 1668), but as noted that is not what occurred here inasmuch as defendant made an objection before jury selection. The objection merely was not placed on the record at that time. Here, the record establishes that "the trial judge was made aware, before he ruled on the issue, that the defense wanted him to rule otherwise, [and thus] preservation was adequate" (*People v Caban*, 14 NY3d 369, 373).

We agree with defendant that the court erred in closing the courtroom to defendant's wife at the start of jury selection on the ground that there "wasn't any room" in the courtroom for her (*see People v Martin*, 16 NY3d 607, 611-612). As the Court of Appeals held in *Martin*, "[a] violation of the right to an open trial is not subject to harmless error analysis and a per se rule of reversal irrespective of prejudice is the only realistic means to implement this important constitutional guarantee" (*id.* at 613 [internal quotation marks omitted]). We reject the contention of the People that the closure of the courtroom was so trivial that it did not violate defendant's right to a public trial (*see id.*). Even assuming, arguendo, that there is a "triviality" exception to the per se rule of reversal set forth in *Martin* (*see Gibbons v Savage*, 555 F3d 112, 119-121, *cert denied* ___ US ___, 130 S Ct 61), we conclude that neither the duration of the courtroom closure in this case nor the substance of the proceedings taking place during the closure may be characterized as "trivial" (*cf. id.* at 121).

Both defense counsel and defendant's wife submitted affidavits in which they averred that the wife was excluded from proceedings on the first morning of jury selection. According to the wife, she was excluded from the courtroom for approximately 1½ to 2 hours. During that period of time, the court read its preliminary instructions to the prospective jurors and asked the first panel of 21 prospective jurors to approach the podium individually to respond to four questions: (1) whether the prospective juror heard or read anything about the case; (2) whether the prospective juror or a close friend or relative had been the victim of a crime; (3) whether the prospective juror or a close friend or relative had been arrested or charged with a crime; and (4) whether the prospective juror could be fair and whether there was a compelling reason why he or she could not serve on the jury. Two prospective jurors were excused upon consent of the prosecutor and defense counsel.

The court then asked the remaining members of the panel whether they knew the prosecutor, the defense attorney, or defendant, whether they had any friends or relatives who were lawyers or worked in law enforcement, and whether they had previously served on a jury. After the prosecutor and defense counsel questioned the prospective jurors, the court held a sidebar with the attorneys to hear challenges to the panel members. The prosecutor exercised nine peremptory challenges, defense counsel exercised seven peremptory challenges, and five prospective jurors were seated and sworn. Thus here, as in *Martin* (16 NY3d at 613), it cannot be said that "nothing of significance

happened" while defendant's wife was excluded from the courtroom
(*Gibbons*, 555 F3d at 121).

We reject the contention of the People that the courtroom was
only closed to defendant's wife until the first prospective juror was
excused.  The People rely on the fact that, at the start of jury
selection, the court advised defense counsel that, "as soon as we
start excusing [prospective jurors], there [would] be room" in the
courtroom for defendant's wife.  It is well settled that a courtroom
is closed only by an affirmative act of the court (*see People v
Peterson*, 81 NY2d 824, 825; *see also Martin*, 16 NY3d at 613).  Here,
defendant's wife averred that the court "addressed [her] directly and
told [her] that [she] would need to wait outside the courtroom, but
that a court attendant would come get [her] as soon as some
[prospective] jurors were excused."  While the wife was waiting in the
hallway, she observed several prospective jurors leave the courtroom
at one point, but "no one came to tell [her] that [she] should come in
and [she] did not believe [she] should enter without being told to do
so."  Approximately 1½ to 2 hours later, a court officer finally came
out into the hallway and told the wife that she could enter the
courtroom.  Under the circumstances of this case, in which the court
specifically excluded the wife from the courtroom and it is undisputed
that she did not reenter the courtroom before the court officer
retrieved her, we conclude that the burden was on the court, not the
excluded individual or the parties, to reopen the courtroom.  Thus,
the courtroom was closed to defendant's wife until such time as the
court officer told her she had permission to reenter.

Contrary to defendant's further contention, we conclude that his
statutory right to a speedy trial was not violated.  Even assuming,
arguendo, that the People's announcement of readiness for trial after
defendant was arraigned on the initial indictment was "illusory and
invalid" (*People v Weaver*, 34 AD3d 1047, 1049, *lv denied* 8 NY3d 928),
we conclude that there was a period in excess of seven days that was
excludable based on defendant's pretrial motion to dismiss the
indictment (*see* CPL 30.30 [4] [a]; *People v Flowers*, 240 AD2d 894,
895, *lv denied* 90 NY2d 1011).  With the exclusion of that time period,
we conclude that the People's announcement of readiness for trial
after the filing of the superseding indictment was timely (*see
generally People v Sinistaj*, 67 NY2d 236, 237).  In light of our
determination that reversal is required based upon the denial of
defendant's right to a public trial, we need not address defendant's
remaining contentions in appeal No. 1 or appeal No. 2.

All concur except SCUDDER, P.J., and CENTRA, J., who dissent and
vote to affirm in the following Memorandum:  We respectfully dissent.
Like the majority, we would dismiss the appeal from the judgment in
appeal No. 1 insofar as it imposed sentence on the conviction of
burglary in the second degree, but we otherwise would affirm the
judgment in appeal No. 1 and the resentence in appeal No. 2.  With
respect to appeal No. 1, we disagree with the majority that reversal
is required based on County Court's error in closing the courtroom.
We agree with the majority that defendant preserved his contention for

our review and that the court erred in closing the courtroom to defendant's wife at the start of jury selection on the ground that there "wasn't any room at all" in the courtroom for her (*see People v Martin*, 16 NY3d 607, 611-612).  Although we recognize that harmless error analysis is not appropriate based on the erroneous closing of a courtroom (*see id.* at 613), we agree with the People that the closing of the courtroom in this case "was so inconsequential that it [was] trivial" (*id.*), such that the court "did not violate defendant's right to a public trial" (*People v Peterson*, 81 NY2d 824, 825).

At the start of jury selection, the court indicated to defendant that his wife could be present in the courtroom as soon as a prospective juror was excused.  Jury selection then began with the court's introductory remarks and precharge.  As noted by the majority, the court asked the prospective jurors to approach the podium one by one to give their responses to the following four questions:  (1) whether they heard or read anything about the case; (2) whether they or a close friend or family member had been the victim of a crime; (3) whether they or a close friend or family member had been arrested or charged with a crime; and (4) whether they could be fair to both sides, and if there was a compelling reason they could not serve on the jury.  It does not appear that these brief conferences could be heard by anyone in the courtroom other than the parties and the court.  During those conferences, two prospective jurors were excused upon consent of both parties.  At that point, according to the court's explicit instructions, defendant's wife could have come into the courtroom; the courtroom was no longer "closed."  Thus, unlike in *Martin*, there was no "extensive questioning of prospective jurors" while the courtroom was closed (*Martin*, 16 NY3d at 613).

We disagree with the majority that the courtroom remained closed until a court officer told defendant's wife that she could reenter the courtroom.  First, we note that there was no discussion held on the record between the court and defendant's wife.  As noted earlier, the only remark by the court at the beginning of jury selection was that, "as soon as we start excusing people, there is going to be room," to which defense counsel responded, "All right."  In support of his motion to set aside the verdict, defendant submitted an affidavit of his wife setting forth her recollection of a conversation with the court and the circumstances that occurred thereafter.  During oral argument of the motion, the court reiterated its recollection that it told defense counsel that defendant's wife could come back in the courtroom as soon as a juror was excused, and the prosecutor noted that no one knew at what point defendant's wife actually returned to the courtroom.

In any event, we disagree with the majority that, under the circumstances of this case, the burden was on the court to reopen the courtroom.  In our view, once the two prospective jurors were excused after the conferences at the podium, defendant should have either requested a brief recess to allow his wife to reenter the courtroom, or objected to the continued closing of the courtroom.  Defendant did neither, and we therefore conclude that reversal based on the closed courtroom is not required.  We note, however, that we agree with the

majority that defendant's statutory speedy trial rights were not violated, and thus that reversal on that ground also is not required.

Entered:  July 6, 2012                    Frances E. Cafarell
                                          Clerk of the Court