# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**224**
**KA 11-02039**
PRESENT: WHALEN, P.J., CENTRA, PERADOTTO, DEJOSEPH, AND SCUDDER, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                          MEMORANDUM AND ORDER

TERRIE J. RUSH, DEFENDANT-APPELLANT.

---

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER, PHILLIPS LYTLE LLP, BUFFALO (DEENA K. MUELLER OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LEAH R. MERVINE OF COUNSEL), FOR RESPONDENT.

---------------------------------------------------------------------------------------------------------

Appeal from a judgment of the Monroe County Court (Melchor E. Castro, A.J.), rendered August 12, 2011. The judgment convicted defendant, upon a jury verdict, of identity theft in the first degree and criminal possession of a forged instrument in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting her upon a jury verdict of identity theft in the first degree (Penal Law § 190.80 [3]) and criminal possession of a forged instrument in the second degree (§ 170.25). Defendant is convicted of assuming the identity of another person by using the name of another person and depositing a forged instrument into a bank account set up in the name of that person. The People presented evidence that the check at issue had been stolen from the company named as payor within a month before the transaction at issue occurred. The person named as payee on the check at issue and in whose purported account the check was deposited testified that he did not set up the bank account, nor did he endorse the check at issue or ask defendant to conduct any banking transactions for him. Photos depicting a woman making a deposit at the time the check at issue was deposited and depicting a woman withdrawing funds from that account at an ATM in temporal proximity to the deposit also were in evidence. Contrary to defendant's contention, viewing the evidence in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621), we conclude that the evidence is legally sufficient to support the conviction of identity theft in the first degree (*see generally People v Bleakley*, 69 NY2d 490, 495).

We reject defendant's contention that the phrase "assumes the identity of another person" is a discrete element that must be proved

(*see People v Yuson*, 133 AD3d 1221, 1221-1222, *lv denied* 27 NY3d 1157; *see also People v Box*, 145 AD3d 1510, 1511). In *Yuson*, we expressly declined to follow the decision of the First Department in *People v Barden* (117 AD3d 216, 224-230, *revd on other grounds* 27 NY3d 550), and we wrote that "the statute is unambiguous and defines the phrase 'assumes the identity of another person' by the phrase that immediately follows it, i.e., by, inter alia, using the personal identifying information of that person" (*id.* at 1222). We thus concluded in *Yuson* that, "inasmuch as the People established that defendant used the personal identifying information of the victims, they thereby established that defendant assumed their identities for the purposes of the statute" (*id.*). Likewise, here the People established that defendant used the personal identifying information of another person, i.e., that person's name and bank account number (*see* Penal Law § 190.77 [1]), to defraud the bank herein (*see* § 190.80).

We also reject defendant's contention that, even assuming that she used the person's personal identifying information, she did not "thereby" commit the offense of criminal possession of a forged instrument because she possessed the check before she deposited it and the use of the identifying information did not cause her to commit the offense. We reject defendant's overly restrictive interpretation of the term "thereby" to mean "because of this" or "as a result of this action," and we instead conclude that the correct interpretation of the term is "[b]y that means" or "in that way" (Black's Law Dictionary 1707 [10th ed 2014]). We therefore conclude that the evidence is legally sufficient to establish that there is a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" (*Bleakley*, 69 NY2d at 495), i.e., that defendant assumed the identity of another person by using personal identifying information of that person and thereby committed the crime of criminal possession of a forged instrument by uttering the check, that is, by presenting it as if it were genuine (*see* Black's Law Dictionary 1781 [10th ed 2014]; *see also* William C. Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 30, Penal Law § 170.00, at 330).

We further conclude that, contrary to the contention of defendant, when viewing the elements of the crimes as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), the verdict is not against the weight of the evidence with respect to the element of knowledge, and with respect to identity (*see generally Bleakley*, 69 NY2d at 495). Even assuming, arguendo, that a different verdict would not have been unreasonable, we conclude that the jury did not fail to give the evidence the weight it should be accorded (*see id.*). Specifically, the People presented evidence that defendant both deposited the stolen check at issue into the account and withdrew funds from that account, and the named payee and account holder testified that he did not set up the account, did not endorse the check and did not authorize defendant to conduct any banking transactions on his behalf. Furthermore, the jury had the opportunity to compare the photos of the person making a deposit and a withdrawal

at the ATM at the relevant times and was in a position to make "an independent assessment regarding whether the [person] in the bank photographs was indeed the defendant" (*People v Russell*, 79 NY2d 1024, 1025).  Contrary to defendant's further contention, the photographic evidence taken at the ATM machine was relevant with respect to intent, knowledge and identity, and thus County Court did not abuse its discretion in admitting that evidence upon determining that it was more probative than prejudicial (*see People v Goodrell*, 130 AD3d 1502, 1503).

We agree with defendant, however, that the court erred in closing the courtroom during jury selection because, inter alia, there was standing room only, thereby excluding the father of defendant's children from the courtroom (*see People v Floyd*, 21 NY3d 892, 893-894; *People v Torres* [appeal No. 1], 97 AD3d 1125, 1126, *affd* 20 NY3d 890; *People v Martin*, 16 NY3d 607, 611).  Indeed, under those circumstances, the court was "required to consider alternatives even if neither party [had] suggest[ed] any" (*Martin*, 16 NY3d at 612).  We conclude, however, that, under the circumstances presented here, the court properly denied defendant's motion pursuant to CPL 330.30 (1), seeking to set aside the verdict based on the courtroom closure.

As an initial matter, by requesting a hearing based upon the court's recollection that a deputy left the courtroom after the venire panel was seated in order to locate defendant's companion, defendant waived her contention that the court improperly expanded the record when it conducted a hearing on her CPL 330.30 (1) motion.  The trial record establishes that, rather than closing the courtroom until some prospective jurors were *excused* (*cf. Floyd*, 21 NY3d at 893; *Torres*, 97 AD3d at 1127; *Martin*, 16 NY3d at 610), the court stated that defendant's companion was required to leave the courtroom until the first 21 prospective jurors were *seated* for voir dire, and that the man would be notified when that process was completed.  The court security officer testified at the hearing that, after the first 21 prospective jurors were seated, she and the other court security officer cleared the rear row of the courtroom and she went into the lobby to find defendant's companion (*cf. Torres*, 97 AD3d at 1127), but that no one was out there, with the exception of another deputy.  She testified that "the judge was just beginning to give his speech to the jury panel" when she exited the courtroom to look for defendant's companion.  She advised defense counsel at the first break that the man was "gone."  She testified that she looked through the windows of the courtroom doors throughout the day and did not see the man.  We conclude that under the circumstances presented here, where the process of jury selection had not yet begun before the courtroom was reopened (*cf. Torres*, 97 AD3d at 1126-1127; *Martin*, 16 NY3d at 613; *see generally People Alvarez*, 20 NY3d 75, 81, *cert denied* ___ US ___, 133 S Ct 2004), the improper closing of the courtroom was "too trivial to warrant the remedy of nullifying an otherwise properly conducted . . . criminal trial" (*Gibbons v Savage*, 555 F3d 112, 121 [2nd Cir

2009], *cert denied* 558 US 932).

Entered:  March 24, 2017                Frances E. Cafarell
                                        Clerk of the Court