# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 41
The People &c.,
     Respondent,
    v.
Dwight Reid,
     Appellant.

Richard M. Greenberg, for appellant.
Rachel Bond, for respondent.
New York Civil Liberties Union, amicus curiae.

CANNATARO, J.:

On this appeal, we are asked to consider whether the trial court abused its discretion in ordering the courtroom closed to the public and all interested spectators for the last four days of defendant's eight-day jury trial. Although the trial court summarized its reasons for the closure, it held no inquiry on the record to determine the necessity and scope of the

- 1 -

closure (*see generally People v Jones*, 47 NY2d 409, 414 [1979], *cert denied* 444 US 946 [1979]). Nor was there any showing that the closure was justified under the criteria set forth by the U.S. Supreme Court in *Waller v Georgia* (467 US 39 [1984]). Thus, on the record before us, we conclude that defendant's Sixth Amendment right to a public trial was violated and he is entitled to a new trial.

Defendant was charged with second-degree murder and two counts of second-degree weapon possession, both related to his alleged role in a fatal shooting. In the midst of defendant's jury trial, the People moved to close the courtroom, citing the fact that photographs had been taken in the courtroom and posted on Instagram with the caption "Free Dick Wolf"—which the prosecutor asserted was a reference to one of defendant's street names. After an off-the-record discussion with counsel, the court noted its concern with the photographs, and added that

> "[p]eople in the courtroom have been very intimidating. . . .
> They intimidated a court reporter already. They stare people
> down. They're staring up here. I am closing this courtroom
> based on the fact that now there are pictures that were taken in
> this courtroom. And I know that pictures can be taken very
> [surreptitiously] with a cellphone. You can look like you're
> looking at your cellphone when you're really taking pictures.
> But clearly pictures were taken in this courtroom by someone
> who had to have been sitting in this courtroom and pictures
> were taken outside the court. I'm closing the courtroom."

Defense counsel objected to the closure and proposed barring cellphones in the courtroom as an alternative, stating that it would be unfair to exclude all spectators from the trial based on the misconduct of a particular individual or group of individuals. The court rejected counsel's proposal and, in what it described as an effort to keep the jury from

drawing negative inferences from the absence of any particular group of spectators, closed the courtroom entirely, including to the victim's family. The court explained that its decision was based on the "cumulative" effect of various factors that created an atmosphere of intimidation during the trial. Specifically, the court referred to unnamed spectators associated with defendant who were acting, in the court's view, in an "extremely intimidating" manner. According to the court, there were "extremely long hard stares coming from the audience." The court also expanded upon its earlier statement regarding the court reporter, explaining that the reporter had been "very shaken" by her interaction days earlier with a group of unidentified spectators who purportedly asked if the reporter was afraid to ride in an elevator with them. The court stated that the spectators were having "a chilling [e]ffect," and under the circumstances, the court did not "believe there [wa]s a lesser remedy" than closure that could be imposed.

Over the following four days, the court was closed to the public for the testimony of several witnesses, summations, and the jury's verdict. At the conclusion of trial, the jury found defendant guilty as charged. Defendant appealed, and the Appellate Division affirmed, holding that "[t]he court's midtrial closure of the courtroom to all spectators for the remainder of the trial was a provident exercise of discretion under the extraordinary circumstances presented" (203 AD3d 474, 475 [1st Dept 2022]). A Judge of this Court granted defendant's application for leave to appeal (38 NY3d 1152 [2022]).

The constitutional right to a public trial "'has long been regarded as a fundamental privilege of the defendant in a criminal prosecution'" (*People v Roberts*, 31 NY3d 406, 425 [2018], quoting *People v Martin*, 16 NY3d 607, 611 [2011]). The presumption is that

trials will be open to the public, and a trial court's discretion to exclude the public from criminal proceedings "must be exercised only when unusual circumstances necessitate it" (*Martin*, 16 NY3d at 611 [internal quotation marks omitted]).

In *Waller v Georgia*, the Supreme Court of the United States set forth criteria for determining when a courtroom may be closed over a defendant's objection. Specifically, "the party seeking to close the [proceedings] must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure" (467 US at 48). Subsequently, in *Presley v Georgia*, the Supreme Court emphasized that "the particular interest, and threat to that interest, must 'be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered'" (558 US 209, 215 [2010], *quoting Press-Enterprise Co. v Superior Court of Cal., Riverside Cty.,* 464 US 501, 510 [1984]; *see Hinton*, 31 NY2d 71, 75 [1972], *cert denied* 410 US 911 [1973] ["special circumstances . . . warranting an exclusion" of the public must be "demonstrated"]).

*Waller*'s requirements were not met in this case. The record indicates that some unidentified spectators shared photos of the trial on social media, but the People did not argue that the social media postings were intended to affect or influence the trial itself, and it bears noting that the photos admitted by the People depicted only images of defendant accompanied by court officers, not of jurors or witnesses. Moreover, although the trial court indicated that the purpose of the closure was to prevent intimidation of witnesses, court personnel and jurors by means of social media postings, "staring" in the

courtroom, and other hostile interactions, the court failed to adequately describe the particular acts and circumstances underlying its conclusion that intimidation was occurring, or to identify the specific individuals who had engaged in such intimidation. The record contains no discussion of the purported offenders, no evidence that any witness was actually intimidated, and only vague descriptions of the purportedly intimidating conduct.

Although the prevention of intimidation by spectators during trial may very well be an "overriding interest" that can support courtroom closure (*see People v Ming Li*, 91 NY2d 913, 917 [1998]), it is incumbent on the trial court to ensure that the record adequately justifies its concerns and demonstrates that the identified interest would be jeopardized absent a closure. Where closure is warranted, it must be tailored to address the overriding interest. Here, the court ordered the broadest possible closure, completely excluding all members of the public for the remainder of trial. On this sparse record the closure was disproportionate in relation to the circumstances described.

Further, "trial courts are required to consider alternatives to closure even when they are not offered by the parties" (*Presley*, 558 US at 214). Although a trial court need not explicitly consider such alternatives on the record (*see People v Echevarria*, 21 NY3d 1, 15 [2013]), here, the court does not appear to have sufficiently considered whether less drastic measures could have resolved troubling spectator behavior, such as addressing those individuals or requesting that they alter their demeanor in the courtroom. Nor did the court make additional efforts to identify particular offenders and exclude only those

individuals from the courtroom.[1]

In short, the record before us does not demonstrate that "unusual circumstances necessitate[d]" closure of the courtroom (*Martin*, 16 NY3d at 611 [internal quotation marks and citation omitted]).  Rather, the record demonstrates only a "mere possibility that [an] interest might be compromised by open court testimony[, which] does not justify abridgement of a defendant's constitutional right to a public trial" (*People v Ramos*, 90 NY3d 490, 506 [1997]).

We emphasize that our decision should not be read as suggesting that a courtroom can never be closed based on the trial court's observations of intimidation (or other prejudicial behavior) taking place in the courtroom.  Trial courts retain "inherent discretionary power . . . to close the courtroom" (*Hinton*, 31 NY2d at 75).  However, that discretion must be "sparingly exercised" and invoked "only when unusual circumstances

---

[1] The Appellate Division incorrectly held that defendant "failed to preserve his arguments that the court should have considered certain other alternatives[] and conducted a *Hinton* hearing" (203 AD3d at 475).  First, as we recognized in *People v Alvarez* (20 NY3d 75 [2012], *certs denied* 569 US 910, 947 [2013]), "[t]he obligation rests with the court to consider alternatives, even where the parties themselves do not offer any" (*id.* at 80; *see also Presley*, 558 US at 214).  Nor was defendant required to expressly request a "*Hinton* hearing," because a hearing is not mandatory in every case.  A "*Hinton* hearing" is often required in cases where closure is sought to protect the identity of an undercover police officer (*see People v Kin Kan*, 78 NY2d 54, 56 [1991]; *Jones*, 47 NY2d at 414-415; *Hinton*, 31 NY2d at 74-76).  However, we have never held that a formal hearing is required for every case in which circumstances might warrant closure (*see Alvarez*, 20 NY3d at 79; *Martin*, 16 NY3d at 611; *Ming Li*, 91 NY2d at 917; *People v Joseph*, 59 NY2d 496, 498 [1983]).  To the contrary, we have explained that "there are times when careful inquiry directed at counsel, the witness, or even the spectators present in the courtroom might be enough" (*Jones*, 47 NY2d at 414).  Defendant's objection was sufficient to trigger the need for such an inquiry and preserve the issue for appeal.

necessitate it" (*id.* at 76; *see Ming Li*, 91 NY2d at 917). When such unusual circumstances occur, it is incumbent on the court to ensure that the record adequately supports excluding members of the public. Here, the court failed to create a sufficient record to justify a complete closure of the courtroom and, as a result, the closure was not narrowly tailored to the interests sought to be protected.

Defendant's remaining argument is academic.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

Order reversed and a new trial ordered. Opinion by Judge Cannataro. Chief Judge Wilson and Judges Rivera, Garcia, Singas and Troutman concur. Judge Halligan took no part.

Decided May 23, 2023