**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00240-CR**
_____

**STEVEN HOWARD LOVEDAY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 10-09-10404-CR**

**MEMORANDUM OPINION**

In five issues, Steven Howard Loveday appeals from three judgments requiring that he serve three consecutive life sentences. In his appeal, Loveday complains that: (1) he was denied a public trial because the trial court closed the courtroom to allow the State to show the jury a video recording containing sexually-explicit images of a child; (2) the trial court, during the guilt-innocence phase of his trial, erred by failing to exclude a judgment that reflects he was

previously convicted for indecency with a child; (3) there is insufficient evidence to support the jury's finding of guilt on the charge of aggravated sexual assault of a child, as alleged in Count One of the indictment; (4) his attorney rendered ineffective assistance because he failed to view a video recording containing child pornography with potential witnesses outside the courtroom before the trial court admitted the recording into evidence; and (5) he remains indigent, and therefore, the judgments the trial court rendered should not have included attorney fees. We affirm Loveday's convictions and his sentences, but we modify the judgments to delete the award of attorney fees.

## Background

In a three-count indictment, the State charged Loveday with aggravated sexual assault of a child (Count One), continuous sexual abuse of a child (Count Two), and aggravated sexual assault of a child (Count Three). *See* Tex. Penal Code Ann. §§ 21.02(b), 22.021(a)(1)(B), (a)(2)(A)(ii), (a)(2)(B) (West Supp. 2013).[1] Loveday's indictment includes an enhancement paragraph, which is based on Loveday's prior felony conviction for indecency with a child by sexual contact. *See* Tex. Penal Code Ann. § 21.11 (West 2011).

---

[1]We cite to the current version of the statutes, as the amendments do not affect the issues set forth in this appeal.

The record before us shows that before trial, Loveday pled true to the indictment's enhancement paragraph. Loveday also elected to have the trial court assess his punishment on Counts One and Three of the indictment, and to have the jury assess his punishment on Count Two. Following the guilt-innocence phase of his trial, the jury found Loveday guilty on all three counts of the indictment; following a punishment hearing on Count Two, the jury assessed a life sentence. On Counts One and Three, the trial court assessed separate life sentences. Loveday was ordered to serve his three life sentences consecutively.

The testimony from the trial reflects that Loveday is C.V.'s[2] father, that C.V. began living in Loveday's home when she was in fifth grade, and that Loveday began to sexually abuse her shortly after she moved in with him. According to C.V., she did not complain to others after Loveday touched her inappropriately because she was "scared." C.V. further explained that "[a] lot" more incidents involving inappropriate sexual contact occurred after the first, including multiple incidents that involved sexual intercourse. C.V. generally described that she and Loveday had sexual intercourse "[a]t least once a week." According to C.V., she

---

[2]To protect the privacy of the person the State alleged Loveday sexually assaulted, the opinion refers to the child by using the pseudonym "C.V.," as the Texas Constitution grants crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]" Tex. Const. art. I, § 30(a)(1).

did not say anything about these incidents because she thought Loveday would not love her if she refused him, and she did not want him to make her live with her mother.

C.V. also described how her fear of Loveday played a role in a pattern of abuse that started after she moved into Loveday's home. The pattern continued over a period of several years before her outcry. According to C.V., when Loveday became angry with her, he sometimes yelled at her; on other occasions, he got physical with her, or hit her. C.V. described one occasion when Loveday became frustrated with his inability to complete a sexual act in which she was a participant. According to C.V., Loveday "stuck a pillow over my head and started punching the back of my head." C.V. described that her head was sore after that assault occurred. In describing why she complied with Loveday's demands for sex, C.V. explained that had she refused, she believed Loveday would have become angry and hurt her physically and sexually.

Legal Sufficiency—Aggravated Sexual Assault

To simplify our discussion of Loveday's issues, we address issue three first. Issue three asserts the evidence is legally insufficient to support the jury's finding that Loveday committed aggravated sexual assault, as alleged in Count One of the indictment.

4

Under Count One of the indictment, the State was required to prove that Loveday placed C.V. in fear that she would suffer an imminent serious bodily injury. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B), (a)(2)(ii) (defining the methods of committing an intentional or knowing aggravated sexual assault). According to Loveday, because C.V. never testified that Loveday's words or acts caused her to fear an imminent and serious bodily injury, the State failed to prove he was guilty of committing aggravated sexual assault. *See id.* § 22.021(a)(2)(A)(ii) (requiring evidence in aggravated sexual assault cases to show that the defendant's acts or words placed the victim in imminent fear of death, serious bodily injury, or kidnapping); *see also id.* § 1.07(a)(46) (West Supp. 2013) (defining the term "'[s]erious bodily injury'").[3]

In reviewing Loveday's legal sufficiency challenge, we consider the evidence that addresses whether C.V. was fearful, whether Loveday's conduct caused that fear, and whether C.V.'s fear reasonably resulted from Loveday's conduct. *See Grunsfeld v. State*, 813 S.W.2d 158, 162 (Tex. App.—Dallas 1991), *aff'd*, 843 S.W.2d 521 (Tex. Crim. App. 1992). We look first to C.V.'s testimony to address whether the evidence established that her participation in the encounter

---

[3]We cite to the current version of the statute, as the amendments do not affect the issues set forth in this appeal.

of September 2010 resulted from a fear that Loveday created through his words or acts. *See Douglas v. State*, 740 S.W.2d 890, 891 (Tex. App.—El Paso 1987, no pet.).

Initially, we note the State is not required to show that Loveday threatened or inflicted a serious bodily injury on C.V.; instead, our focus concerns whether the jury could reasonably conclude, based on the evidence admitted during the trial, that Loveday made C.V. fear receiving a serious bodily injury had she refused to cooperate with Loveday's sexual demands. *See Kemp v. State*, 744 S.W.2d 243, 245 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). In determining that C.V.'s fear was reasonable, the jury was entitled to consider Loveday's objective conduct—his acts, words, or deeds on the day of and during periods preceding the date of the alleged sexual assault—and infer from all of the circumstances whether C.V.'s fear of Loveday was reasonable. *See Brown v. State*, 960 S.W.2d 265, 268 (Tex. App.—Corpus Christi 1997, no pet.); *Kemp*, 744 S.W.2d 245.

Additionally, to prove its case, the State was not necessarily required to prove that Loveday verbally threatened C.V. with a serious bodily injury on the day the sexual assault occurred; nor was the State required to prove that Loveday could have inflicted a serious bodily injury on C.V., but did not. *See Mata v. State*, 952 S.W.2d 30, 32 (Tex. App.—San Antonio 1997, no pet.). Instead, if the jury

could reasonably infer from the objective facts that C.V.'s participation in the encounter occurred because she reasonably feared she would suffer an imminent and serious bodily injury if she refused, evidence of an actual serious injury is not required. *See Brown*, 960 S.W.2d at 268.

The evidence in the record regarding the reasons that C.V. participated in the September 2010 encounter at issue is largely circumstantial. The record shows that over a period of years, Loveday manipulated C.V. into engaging in illegal sexual behaviors, that he inflicted and threatened serious bodily injury on previous occasions, and that C.V.'s fear of being seriously injured offers a reasonable explanation about why C.V. would have complied with Loveday's demands for sex. The record before us includes C.V.'s testimony that Loveday manipulated her to engage in sexual relations by making her fear that he would hurt her.

The record also includes testimony that shows a history of Loveday's use of threats and physical violence against C.V. In addition to the incident involving Loveday punching C.V. in the back of the head while having sex with her, C.V. described another occasion when, after being picked up from school, she told Loveday about a boy that she knew. According to C.V., Loveday said that he was going to kill or hurt the boy, and he then punched her in the face, chipping her teeth. The blow caused her mouth to bleed; according to C.V., her mouth hurt

"really bad[,]" her face was "really swollen" for a while, and she "couldn't talk[.]" On another occasion, when discussing why she sent sexually explicit videos she made of herself to Loveday while he was away working in another state, C.V. explained that Loveday had threatened to make her "life hell" had she refused Loveday's requests for the videos. C.V. testified that she understood Loveday's threat to make her life hell to mean that "he was going to hurt me."

The record also contains C.V.'s testimony that describes how Loveday became more volatile during the week before the September 2010 encounter occurred, and how that encounter ultimately led C.V. to complain that Loveday committed aggravated sexual assault. According to C.V., Loveday had become "more violent, more angry and forcing[,]" and the sexual encounters between them began to occur more frequently, almost daily. During that period, according to C.V., Loveday "wouldn't really care if I was crying or if it hurt." C.V. also explained that by September 2010, Loveday said to her that "if I didn't start getting any better that he was going to start hitting me and forcing me to do more."

In determining whether the evidence admitted during a trial is legally sufficient to support the defendant's conviction, an appellate court considers the entire record in the light most favorable to the verdict; after considering all of the evidence admitted at the trial, based on a standard of beyond reasonable doubt, the

appellate court then decides whether any rational trier of fact could have found the defendant guilty of all the essential elements of the offense. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The evidence, when viewed as a whole, shows that Loveday used words and acts to place C.V. in fear of receiving an imminent and serious bodily injury. We conclude the evidence is legally sufficient to support the jury's verdict that Loveday committed aggravated sexual assault in September 2010. We overrule issue three.

Character Evidence

In issue two, Loveday complains that the trial court, during the guilt-innocence portion of the trial, erred by admitting a judgment to show that Loveday had a prior conviction for indecency with a child. According to Loveday, the prior conviction is character evidence made inadmissible by Rule 404 of the Texas Rules of Evidence. *See* Tex. R. Evid. 404 (Character Evidence Not Admissible To Prove Conduct; Exceptions; Other Crimes).

The State contends that Loveday failed to properly preserve his issue two complaint for our review on appeal. According to the State, Loveday's trial objection regarding the judgment at issue was based solely on the claim that the

9

prejudicial effect of the judgment outweighed its probative value under Rule 403 of the Texas Rules of Evidence. According to the State, Loveday did not assert a Rule 404 objection to the admission of the prior conviction for indecency during the trial.

Our review of the record shows that the State is correct; Loveday did not raise a Rule 404 objection when the trial court admitted Loveday's prior conviction for indecency during the trial. Generally, to preserve error on appeal, the complaining party must make a timely request, objection, or motion that states the grounds for the ruling sought, and unless the specific grounds were apparent from the context, the request presented to the trial court must be sufficiently specific to put the trial court on notice of the party's complaint. Tex. R. App. P. 33.1(a)(1)(A). To preserve a particular complaint for appeal, Loveday was required to raise the same complaint on appeal that he raised at his trial. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009).

At trial, Loveday did not object to the admission of the judgment at issue under Rule 404. Instead, Loveday objected solely on the basis that admitting his conviction for indecency would violate Rule 403. Because Loveday's attorney failed to make the trial court aware that Loveday desired to object to admitting the

10

conviction at issue under Rule 404, his Rule 404 argument was not properly preserved for our review on appeal. Issue two is overruled. *See id.* at 465.

Public Trial

In issue one, Loveday complains the trial court closed the courtroom to the public to allow the State to show the jury a video recording containing sexually-explicit images of C.V., which he argues resulted in the denial of his right to receive a public trial. According to Loveday, before closing the courtroom, the trial court failed to make a record that demonstrates it balanced the interests relevant to holding a public trial; Loveday concludes the trial court failed to consider all other reasonable alternatives before closing his trial to the public. *See* U.S. CONST. amend. VI.; *Steadham v. State*, 360 S.W.3d 499, 504 (Tex. Crim. App. 2012). The State responds that Loveday failed to preserve the complaint he raises in issue one for our review.

The record shows that before the admission of any evidence, on the morning of the first day of trial, the State informed the trial court that it intended to present a video recording containing sexually explicit images of a child. The State requested that when the trial court gave the jury the opportunity to view the recording, it consider closing the courtroom.

11

In response to the State's request, Loveday's attorney informed the trial court that he did not object to closing the courtroom to allow the jury to view the recording. After the noon recess, the trial court informed the parties of its decision to close the courtroom to the public to allow the jury to view the recording. At that point, Loveday's attorney stated that he had no objection, except that he desired to preserve his objection to the admission of the recording because his expert had not yet seen it. However, Loveday never informed the trial court that he objected to the temporary closing of the courtroom to allow the jury to view the recording. We conclude that Loveday failed to make a timely complaint during trial that temporarily closing the courtroom to allow the jury to view the recording denied him his right to receive a public trial. *See* Tex. R. App. P. 33.1. Because Loveday did not make an objection during trial that is consistent with the argument he makes on appeal, his issue one argument was not preserved for appellate review. Issue one is overruled.

## Investigation

In issue four, Lovelady contends the trial court, by refusing to provide his attorney and his witnesses the opportunity to view the recording containing sexually explicit images of C.V. outside the courtroom, prevented his attorney from properly investigating his case. The record shows that on the morning of the

12

second day of trial, Loveday's attorney, shortly after being informed by the State of the existence of the recording, asked the trial court to allow his expert to review the recording outside the courtroom. In response to the request, the trial court advised Loveday's attorney that it did not usually provide pornographic images "to people outside the courtroom[,]" and that the recording "need[ed] to be sealed here in the courtroom even while the trial is going on." The trial court first advised Loveday's attorney to have his expert come to the courtroom; later, the trial court indicated that it would allow a detective to take the recording to Loveday's expert.

The Code of Criminal Procedure does not require that trial courts allow video recordings containing pornographic images of children to be viewed outside State controlled facilities. *See* Tex. Code Crim. Proc. Ann. art. 38.45(a)(1) (West Supp. 2013) (providing that during the course of a criminal hearing or proceeding, the trial court may not make available for copying or dissemination to the public property or material that constitutes child pornography).[4] Exceptions to article 38.45 allow defendants on trial, defense attorneys representing the defendant being tried, and expert witnesses who are expected to provide expert testimony at trial to have access to property or material that constitutes child pornography, with certain

[4]We cite to the current version of the articles in the Code of Criminal Procedure throughout the opinion, as any amendments to the statutes do not affect the issue that is on appeal.

13

restrictions. *Id.* art. 38.45(c) (West Supp. 2013). Article 39.15 of the Code of Criminal Procedure restricts the defendant, the defendant's attorney, and the defendant's experts from copying, photographing, duplicating, or otherwise reproducing the pornographic material. *Id.* art. 39.15(c) (West Supp. 2013). Additionally, the Code of Criminal Procedure provides that pornographic images of children are considered to have been reasonably made available to the defendant, the defendant's attorney, and the defendant's experts if the State provides them an "ample opportunity" to inspect, view, and examine the images at a facility under the State's control. *Id.* art. 39.15(d) (West Supp. 2013).

The record shows that the State provided Loveday's attorney and his expert an ample opportunity to review the recording before it was shown to the jury.[5] The trial court was not required to allow Loveday, his attorney, or his experts, to have copies of the recording, nor was the trial court required to allow them to review the recording outside a State controlled facility. *See id.* art. 39.15(c), (d). We conclude that the trial court complied with the requirements of the Code of Criminal Procedure regarding access to the recording at issue. *Id*. art. 39.15(d).

Moreover, Loveday did not file post-trial motions to demonstrate how he was harmed because his attorney and his expert were not allowed to review the

---

[5]The record does not show that Loveday's attorney ever requested that Loveday be given an opportunity to review the recording personally.

recording in a facility not in the State's control. Consequently, Loveday has failed to demonstrate on appeal that the trial court's refusal to grant his trial request to review the recording outside a state-controlled facility affected his substantial rights. *See* Tex. R. App. P. 44.2(b). Issue four is overruled.

Attorney Fees

In issue five, Loveday complains that because he is indigent, the trial court abused its discretion in assessing attorney fees against him. Article 26.05 of the Code of Criminal Procedure permits a trial court to order a defendant to reimburse the State for the fees of an appointed attorney if the defendant has financial resources that enable him, in whole or in part, to offset the costs of legal services. Tex. Code Crim. Proc. Ann. art. 26.05(g) (West Supp. 2013). Obviously, a finding of indigency before trial suggests that the defendant is without resources to offset such costs, absent some subsequent material change in the defendant's financial condition.

The Court of Criminal Appeals has explained that under article 26.05, "once a defendant is declared indigent, a trial court may order a defendant to pay for the costs of 'legal services provided'—but only if it first determines that the 'defendant has financial resources that enable him to offset in part or in whole the costs[.]'" *Wiley v. State*, No. PD-1728-12, 2013 Tex. Crim. App. LEXIS 1464, at

15

*10 (Tex. Crim. App. Sept. 25, 2013) (quoting Tex. Code Crim. Proc. Ann. art. 26.05(g)). Prior to trial, the trial court found Loveday indigent and appointed an attorney to represent him. The record further shows that the trial court appointed an attorney for Loveday on appeal and granted Loveday's motion for a free reporter's record. The Court of Criminal Appeals has explained that a defendant, previously found to be indigent, is presumed to remain indigent unless the record shows that there has been a material change in the defendant's financial status. *See id.* at **10-11; *see also* Tex. Code Crim. Proc. art. 26.04(p) (West Supp. 2013). In the absence of information in the record demonstrating such a change, the evidence will not support the trial court's ordering a defendant to reimburse the State for attorney fees. *See Wiley*, 2013 Tex. Crim. App. LEXIS 1464, at **10-11.

There is no evidence in the record that Loveday's financial circumstances materially changed after the trial court found him to be indigent and appointed an attorney to represent him at trial. To the extent there is information about Loveday's ability to reimburse the State for the cost of the attorney the State provided for him, the information available in the record tends to show that Loveday remains indigent. *See generally Cates v. State*, 402 S.W.3d 250, 251-52 (Tex. Crim. App. 2013); *In re Daniel*, 396 S.W.3d 545, 547-50 (Tex. Crim. App. 2013). We hold that the record is insufficient to support the trial court's order that

16

Loveday reimburse $16,000 to the State for attorney fees. We sustain issue five, and we modify the trial court's judgments and delete the language from each judgment that orders Loveday to reimburse the State in the sum of $16,000 for attorney fees. Accordingly, in the judgment for Count One, under "Atty. Fees[,]" we delete "16,000.00[.]" In the judgments for Counts Two and Three, under "Atty. Fees[,]" we delete "See Ct 1[.]"

Additionally, we note that Loveday's brief points out a clerical error under Count One of the indictment in the trial court's judgment. The judgment for Count One reflects that Loveday pled "Guilty" to Count One. According to Loveday, the reporter's record accurately reflects that he pled "not guilty[]" to Count One. Loveday asks that we correct the clerical error in the judgment so that the judgment accurately reflects what occurred in the trial court.

After reviewing the reporter's record, we agree that the judgment, as it relates to Count One, contains a clerical error. Accordingly, in the judgment rendered on Count One, under "Plea to Offense[,]" we delete the recitation in the judgment stating that Loveday pled "Guilty," and we reform the judgment to recite that Loveday pled "Not Guilty." As modified, we affirm the trial court's judgments in trial Cause Number 10-09-10404-CR as to Counts One, Two, and Three.

17

AFFIRMED AS MODIFIED.


                                 _____

                                         HOLLIS HORTON
                                             Justice


Submitted on September 19, 2013
Opinion Delivered October 30, 2013
Do Not Publish

Before Gaultney, Kreger, and Horton, JJ.